OÖLITIC STONE COMPANY OF INDIANA *v.* RIDGE.

[No. 21,387. Filed May 24, 1910. Rehearing denied October 11, 1910.]

1. PLEADING.—*Striking Out Complaint Barred by Statute of Limitations.*—A complaint showing on its face that it is barred by the statute of limitations cannot be stricken out on motion, but may be held bad on demurrer, and where it does not show that it is barred, the statute of limitations must be set up as a defense. p. 566.

2. MASTER AND SERVANT.—*Service Outside of Scope of Employment.*—*Complaint.*—A complaint alleging that the plaintiff was employed to shovel loose dirt from the floor of defendant's quarry, that defendant ordered him to go behind a large channeled stone and to remove the wedges, that the wall adjacent thereto was loose and dangerous, to defendant's knowledge, that plaintiff was ignorant thereof, and that such wall fell to plaintiff's injury, states a cause of action. p. 567.

3. MASTER AND SERVANT.—*Service Outside Scope of Employment.*—*Dangerous Place.*—*Time to Repair.*—The rule that the master must be shown to have had time in which to repair the defect causing the injury complained of does not apply to negligence in ordering a servant to do work outside the scope of his employment in a known dangerous place. p. 570.

4. MASTER AND SERVANT.—*Service Outside Scope of Employment.*—*Assumption of Risk.*—A servant ordered to perform labor out-

side the scope of his employment may assume that the place in which he is ordered to work is safe; and he does not assume the risk of dangers of which he does not know.  pp. 570, 580.

5. PLEADING.—*Amended Complaint.—Statute of Limitations.*—An amended complaint ordinarily dates back to the filing of the original complaint, but where a new cause of action is set forth the statute of limitations applies thereto as of the date of the filing of such amended complaint, the court determining from the substantial nature of the claim presented, and not from the formal manner in which it is alleged.  p. 570.

6. PLEADING.— *Amended Complaint.— Master and Servant.— Employers' Liability Act.—Common Law.*—An amended complaint for damages received because of defendant's violation of its common-law duty as to a safe place is not barred by the statute of limitations on the ground that the original complaint filed within two years was held to be under section one of the employers' liability act (Acts 1893 p. 294, §8017 Burns 1908).  pp. 571, 575.

7. JUDGMENT.—*Res Judicata.—Master and Servant.—Negligence. —Employers' Liability Act.*—A judgment in an action founded upon a violation of section one of the employers' liability act (Acts 1893 p. 294, §8017 Burns 1908) constitutes a bar to an action at the common law for the same injuries.  p. 574.

8. ACTION.—*Statutes.—Unconstitutional.*—No right arises on behalf of a servant of a stone company from the company's violation of section one of the employers' liability act (Acts 1893 p. 294, §8017 Burns 1908), such statute being unconstitutional as to such company.  p. 574.

9. TRIAL.—*Instructions.—How Considered.—Appeal.*—Instructions must be considered as an entirety, and if they fairly present the law, defects therein will be considered harmless.  p. 576.

10. TRIAL.—*Instructions.—Duplication.*—It is not erroneous to refuse to duplicate instructions.  p. 576.

11. TRIAL.— *Instructions Requested.— Correctness of.*—The trial judge may properly refuse to give an instruction requested which is not accurate.  p. 576.

12. MASTER AND SERVANT.—*Negligence.—Damages.—Permanent Injuries.—Evidence of Weakness of Mind.*—Where the complaint alleged that the plaintiff was crushed about his shoulders, head, breast and abdomen and permanently disabled, evidence that the plaintiff became sick when he concentrated his mind for any length of time upon one thing, that his memory was impaired, and that he coughed for two years after his injuries, is admissible.  pp. 576, 578.

13. DAMAGES.—*Special.—Complaint.*—Damages which do not naturally flow from the injuries alleged must be specially pleaded and proved.  p. 577.

14. MASTER AND SERVANT. — *Vice-Principals.* — *Service Outside Scope of Employment.*—A person in charge of the work at a stone quarry, who has authority to order a shoveler to cease his ordinary work and to perform other labor outside the scope of his employment, constitutes a vice-principal as to such work. p. 581

15. DAMAGES.—*Excessive.*—A verdict for $7,050 is not excessive where the plaintiff was 27 years old at the time of his injury and the injuries caused him to become a "physical wreck," and unable to work. p. 582.

16. APPEAL.—*Termination of Litigation.*—Where a case has been tried three times and the successive verdicts have been increased at each trial, the Supreme Court may properly affirm the judgment and terminate the litigation, where it appears that a just judgment was recovered. p. 582.

From Morgan Circuit Court; *Joseph W. Williams*, Judge.

Action by Andrew J. Ridge against the Oölitic Stone Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Elmer E. Stevenson, Duncan & Batman, George W. Grubbs* and *W. H. Martin*, for appellant.

*John A. Riddle, David E. Watson* and *H. E. McGinnis*, for appellee.

JORDAN, J.—Appellee, while in the service of appellant, on March 19, 1901, sustained the personal injuries of which he complains, due to the alleged negligence of appellant. The original complaint in this action was in two paragraphs and was filed in the Monroe Circuit Court on January 29, 1902. Subsequently, the cause was venued to the Morgan Circuit Court, where the amended complaint, upon which the judgment here involved was recovered, was filed on March 12, 1908. This latter complaint by its averments discloses, among others, the following facts: That defendant was, on March 19, 1901, a corporation engaged in the business of operating a stone-quarry in Monroe county, Indiana; that on said day and prior thereto plaintiff was in the employ of defendant as its servant, employed by defendant company as a shoveler at the wages of $1.25 a day; that the sole duties

of plaintiff under his said employment as shoveler, for which he was hired and which he agreed to perform, was to shovel mud and loose dirt from the floor of defendant's quarry, and to pick up stones and spalls and remove them from the floor of said quarry; that on the day heretofore mentioned this plaintiff was in the service of said defendant, engaged as such shoveler in shoveling mud and loose dirt and in picking up and removing stones and spalls from the floor of said quarry, and while he was so engaged said defendant at the same time was engaged in quarrying a large stone about thirty feet long, seven feet thick and five feet wide, extending north and south in said quarry, and said stone had been cut loose by defendant company from the main wall on the east side of said quarry, and the north end thereof, by means of certain channeling machines operated by defendant's employes, and turned over toward the west side, leaving a space of about five feet between said stone so turned over and the wall on the east side and north end of said quarry, from which it had been cut loose; that there remained under and behind said stone and east of it, after it had been so turned over to the west, certain slips, wedges and tools with which it had been broken loose from the floor of said quarry; that plaintiff had nothing whatever to do with managing, running or operating said channeling machine or the slips, wedges and tools connected with and used in quarrying said stone as aforesaid, nor had he any right, power or authority to give any orders or directions in reference to running, managing or operating said channeling machines, or in the use of said slips, wedges or tools, but that he was hired, employed and engaged to perform only the duties of a shoveler or mudder; that on said day said defendant, by Peter Deckard, who at said time was engaged in the service of defendant and was acting in the capacity of ledge boss for defendant in said quarry, and who had full control of all men in and about said quarry, including this plaintiff, and with full power to discharge and em-

ploy men, ordered, directed, required and compelled this plaintiff, while he was so engaged in removing mud, loose dirt, stones and spalls from the floor of said quarry, shortly after said stone had been turned over as aforesaid, to quit his said work of removing dirt and spalls from the floor of said quarry and to go around the south end of and behind said stone and into the open space between it and the wall on the east side and north end of said quarry, and remove said slips, wedges and tools from under and behind said stone, such employment and services being then and there wholly different from and outside of the service he was employed to perform, and more hazardous than the work he had been employed to do and had agreed to perform; that pursuant to and by reason of said order plaintiff did quit his said work as such shoveler, went into said space, as ordered, and began picking up said slips, wedges and tools as ordered and directed by defendant's said boss; that by reason of the fact that the plaintiff was employed as such shoveler, and was so ordered and directed by defendant's ledge boss, Peter Deckard, to quit his said work as shoveler, and to go around the south end and behind said stone and into the open space between it and the wall on the east side and north end of said quarry and remove said slips, wedges and tools from under and behind said stone, it became and was the duty of said defendant, through its said ledge boss, to see that the ledge on the east side and north end of said quarry, from which said stone had been cut loose, and the place where plaintiff was so ordered to pick up said slips, wedges and tools, was reasonably safe for this plaintiff to work in and about, and to see that said wall was carefully secured by natural or artificial support, or taken down and made free from the danger of falling, and reasonably safe for this plaintiff to work near in complying with the order of defendant's said ledge boss, and to inspect it before ordering plaintiff to go to such place or about said ledge or wall, and to see that it was reasonably safe for plaintiff to work in and about in com-

plying with his said orders, and free from danger of falling upon plaintiff while he was obeying said order; that defendant, through its said ledge boss, did not perform its said duty in that behalf, but carelessly and negligently failed to see that the ledge or wall on the east side and north end of said quarry, from which said stone had been cut loose, and the place where plaintiff was so ordered to pick up said slips, wedges and tools, was reasonably safe for this plaintiff to work in and about in complying with and obeying said order, and carelessly and negligently failed to see that said ledge or wall was carefully secured by natural or artificial supports, or taken down and made free from danger of falling upon this plaintiff while he was so complying with said order of defendant's said ledge boss; that said defendant by its said ledge boss carelessly and negligently failed to inspect said east wall of said quarry and the north end of it from which said stone had been so quarried, before ordering this plaintiff to go into such place, so that by reason thereof, on said day, while plaintiff was engaged in picking up said slips, wedges and tools, in obedience to said order of said Peter Deckard, and immediately after plaintiff had left his said work as a shoveler, had gone behind said stone, pursuant to said order, and while about to remove said slips, wedges and tools, in obedience to the orders and directions of said ledge boss, Peter Deckard, and while exercising due and proper care and diligence, and without any fault or negligence on plaintiff's part, several tons of clay, dirt, mud and rock, or original deposit, which had been left unsupported, by reason of the removal of said large stones, fell from said ledge of said quarry, and, without warning to the plaintiff, fell upon and against him with great weight and force, covering him to the depth of four or five feet and crushed and bruised him about his back, shoulders, head, breast and abdomen, breaking three of his ribs and one of his legs, crushing his skull and forcing a sharp piece of rock under his chin, up through his mouth and

tongue and into the roof of his mouth, and otherwise greatly bruising, cutting, lacerating and wounding him, thereby permanently disabling and injuring said plaintiff.

The complaint further shows that the wall left by the excavation of said large stone was left unsupported and unsafe, and was liable to fall upon the plaintiff at the time he was engaged in the work of picking up said wedges and tools in complying with the orders and directions of defendant's said ledge boss, Peter Deckard. All of which it is alleged was known to the defendant company and said Deckard at and before the time of said injury, and by the exercise of reasonable care could have been known.

It is further averred that said defendant and said Peter Deckard carelessly and negligently failed to make any inspection whatever of said wall or ledge and the north end of said quarry, either before or after said stone had been taken out of said place and turned over toward the west, in order to inform themselves whether said wall was in danger of falling, but left it in a dangerous condition, without sufficient natural or artificial support to sustain it, so that the bank of dirt, mud and stone so left by the removal of said large rock was in great and immediate danger of caving in and falling, and did cave in and fall upon plaintiff, as aforesaid; that the plaintiff was unacquainted with the condition of said bank or wall of said stone-quarry at the place he was so ordered and directed to pick up said slips, wedges and tools, and where he was injured as heretofore set out, and had nothing whatever to do with the quarrying of said stone, and did not see, and could not by the exercise of reasonable care have seen and observed, the peril and danger which he was in at the time he was picking up said slips, wedges and tools in the open space under said stone, while complying with said order of defendant's ledge boss, and had no knowledge whatever that said wall was loose, weak or dangerous, or liable to fall; that the wall on the east side and north end of said

quarry, which fell upon plaintiff, appeared to him to be of solid rock, mud and dirt of such a character as to give no indication that it was in danger of falling, without a more minute inspection of it; that the plaintiff relied upon defendant and said Peter Deckard, and believed that they had made a careful inspection of said bank or wall, and seen that it was safe, and free from the danger of falling upon plaintiff while he was at work in obedience to said order; that it was with this belief and conviction, that said defendant had discharged its duty aforesaid, that plaintiff went into said open space in obedience to the order of said ledge boss, Peter Deckard, to pick up said slips, wedges and tools, when he was injured as aforesaid; that said injury occurred to plaintiff while he was in the service of and at work for said defendant in picking up said slips, wedges and tools in obedience to the orders and directions of defendant's said ledge boss, as aforesaid, and while he was in the exercise of due care and caution, and without any fault or negligence on his part; that by reason of the carelessness and negligence of defendant as aforesaid plaintiff was injured, is permanently disabled, has suffered great pain of body and anguish of mind and still suffers great pain from said injuries, will never be able to earn money by his labor as he was before said injury, and has incurred a doctor's bill of $300 in endeavoring to be cured of said injuries, all to his damage in the sum of $25,000.

Appellant unsuccessfully moved to strike this amended complaint from the files, on the ground that the action therein alleged was barred by the statute of limitation. It next demurred to the complaint for want of facts. This demurrer was overruled, to which ruling it excepted. Thereupon appellant filed an answer in four paragraphs. The first was a general denial; the second set up the two-year statute of limitations; the third was in the nature of a special plea of the two-year statute of limitations. Said third paragraph referred to various records and proceedings had in the case

from the time the action was originally commenced down to the time of filing the amended complaint on which the cause was tried and judgment herein recovered. It closed with the allegation that, by reason of the special facts therein alleged, the present cause of action, introduced by the amended complaint, had not accrued within two years prior to the commencement of this action. The fourth paragraph alleged that the cause of action did not accrue within two years before filing the amended complaint. A demurrer by appellee to the third paragraph of the answer was sustained, to which appellant excepted. The reply was a general denial. Upon the issues joined the cause was tried by a jury and a verdict returned in favor of appellee, assessing his damages at $7,050. Along with this general verdict the jury returned answers to numerous interrogatories. A motion for a new trial, enumerating various reasons therefor, was overruled and a judgment was rendered on the verdict.

The following errors are assigned: That the court erred (1) in overruling appellant's motion to strike the amended complaint from the files; (2) in overruling the demurrer to the amended complaint; (3) in sustaining demurrer to the third paragraph of the answer; (4) in overruling appellant's motion for judgment upon the interrogatories; (5) in overruling the motion for a new trial.

There was no error in overruling appellant's motion to strike out the amended complaint on the ground that the action was barred by the statute of limitations. Such

1.  a procedure is not recognized. Where a complaint shows upon its face that the action as therein alleged is barred by the statute of limitations, and also discloses that the cause does not fall within any of the exceptions of the statute, then the question in respect to the action's being barred by limitation may be raised by demurrer, otherwise such question must be presented by answer. *Jeffersonville, etc., R. Co. v. Hendricks* (1872), 41 Ind. 48; *Kent v. Parks*

(1879), 67 Ind. 53; *Dorsey Mach. Co.* v. *McCaffrey* (1894), 139 Ind. 545; *Roberts* v. *Smith* (1905), 165 Ind. 414.

Some objections, which we will hereafter mention, are urged against the amended complaint herein by counsel for appellant. It will be noted that the pleading predicates the liability of defendant upon the fact that it ordered plaintiff immediately to leave the services which he had been employed to perform in defendant's quarry, and which at the time he was performing, to go into the excavation from which the large stone in question had been channeled, for the purpose of removing certain slips, wedges and tools from under and behind said stone. It further appears from the complaint that this service, which defendant ordered plaintiff to perform, was wholly different from and outside of the work that he had been engaged to do, and was more hazardous than the work that he agreed to perform under his engagement with defendant. It is further disclosed that plaintiff obeyed this order of defendant, and while carrying it out he was injured, as alleged in the complaint. The pleading shows that the place in which plaintiff was ordered to work was unsafe and dangerous, because the wall was left unsupported after the channeling of said stone, and was liable to cave in and fall upon plaintiff while he was engaged in complying with the orders of defendant.

It further appears that defendant knew that the wall in question was left unsupported, was unsafe and dangerous, and liable to cave in; that plaintiff was not aware of the danger to which he was subjected by the order in controversy, and had no knowledge of the loose, weak and dangerous condition of said wall; that he relied upon defendant, and believed that the latter had discharged its duty in making a careful inspection of the wall in order to see that it was safe and free from danger; that with this belief and conviction he went into said open space, in obedience to the order, to pick up said slips, wedges and tools.

It is further alleged that defendant carelessly and negligently failed to make any inspection whatever of said wall or ledge, either before or after said stone had been taken out of said place and turned over, in order to inform itself whether such wall was in danger of falling, but left it in a dangerous condition, without any props or natural support to sustain it; that by the removal of said large stone said wall was in immediate danger of caving in and falling, and did cave in and fall upon 'plaintiff, as aforesaid.

While the complaint cannot be commended in all respects as a model pleading, nevertheless, under the facts alleged it may be said to present a case where a servant is ordered by his master immediately to leave—for a temporary purpose—the work in which he is at the time engaged, and which he had been employed to perform, and to engage in a more dangerous or hazardous service outside of that for which he had been employed, without any notice or warning from the master or otherwise of the attendant danger or hazard to which he is subjected by being directed to engage in such dangerous work. The complaint appears to be based upon the principles affirmed in the following cases: *Pittsburgh, etc., R. Co.* v. *Adams* (1885), 105 Ind. 151; *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 6 L. R. A. 584, 16 Am. St. 372; *Nall* v. *Louisville, etc., R. Co.* (1891), 129 Ind. 260; *Brazil Block Coal Co.* v. *Hoodlet* (1891), 129 Ind. 327; *Louisville, etc., R. Co.* v. *Hanning* (1892), 131 Ind. 528, 31 Am. St. 443; *Cincinnati, etc., R. Co.* v. *Madden* (1893), 134 Ind. 462, and cases cited; *Republic Iron, etc., Co.* v. *Berkes* (1904), 162 Ind. 517, and cases cited. See, also, *Illinois Steel Co.* v. *Schymanowski* (1896), 162 Ill. 447.

In the case of *Pittsburgh, etc., R. Co.* v. *Adams, supra,* this court said: "When, by the order of the master, the servant is carried beyond his employment, he is carried away from his implied undertaking to assume the risks inci-

dent to the employment. Hence, it is, that when a servant is thus, by orders of the master, put at work outside of his employment, and is injured by reason of defective machinery, railroad track, etc., without his fault, the master is liable, regardless of the care he may have exercised to keep the machinery, railroad track, etc., in a safe condition. When a servant is thus ordered to work at a particular place, or with particular machinery, etc., outside of his employment, the master impliedly assures him, not only that he has exercised reasonable care to have the place, machinery, etc., in a safe condition, but also that they are in a safe condition and fit for the business for which they are used.''

In the case of *Republic Iron and Steel Co.* v. *Berkes, supra,* this court said: ''Appellee's duty as a servant of appellant was to yield obedience to the orders of his superiors. In fact, it appears that he was obeying a specific order of the foreman, under whose control and authority he had been placed by the master. He had the right to presume, in the absence of warning or notice to the contrary, that in conforming to the order he would not be subjected to injury. * * * He was justified in presuming that the foreman would not give improper orders, and would not direct him to assume improper risks.''

Appellant's counsel urge as an objection to the complaint, that it does not appear therein that the dirt which fell upon and injured appellee was loose. Certainly the facts averred in the pleading fully disclose that this was the condition of the dirt at the time it fell and injured appellee. It is further pointed out that the pleading is bad because it is not therein shown how long before appellee was injured appellant could have known that the wall in question was unsafe. Or, in other words, that it is not shown that a sufficient time had elapsed, after appellant company became aware of the unsafe condition of the place, to afford it an opportunity either to make it safe or to warn appellee of

the attendant danger. Under the circumstances in 3. this case, this rule for which appellee contends is not applicable. It is shown that at and prior to the time appellant gave the order in question it knew that the place to which it ordered appellee to go was unsafe and dangerous. Consequently, it should not have given the order and required him to comply therewith without warning him of the attendant danger to which he was being subjected. The fact of how long before appellant gave the order it had knowledge of the unsafe or dangerous condition of the place is not material to appellee's cause of action.

Appellant was bound to know when it gave the order in question to appellee that, in the absence of any warning or notice to him of the unsafe condition of the place, he 4. had the right to assume that in complying with the order he would not be exposed to danger or peril. By its order appellant, impliedly at least, assured appellee that in yielding obedience thereto he would not be subjected to danger. In support of what we herein affirm see authorities heretofore cited.

Appellant next argues that under the evidence its plea of the two-year statute of limitations should have been sustained, and that the right of action set up in the 5. amended complaint was completely barred at the time the latter complaint was filed. As previously shown, appellee sustained the injuries of which he complained in March, 1901, and that he commenced his action to recover therefor against appellant on January 29, 1902, less than one year after the date of receiving the injuries; that the amended complaint, upon which the judgment herein was recovered, was filed in March, 1908. As a general rule the authorities affirm that an amendment to a complaint relates back to the time of the commencement of the action, but in a case where a new and independent right of action is brought in by the amendment, in applying the statute of limitations, reference must be had to the time the

amended complaint is filed. In determining the question, however, the court must look to the substantial nature of the claim introduced into the action by the amendment, and not to the formal manner in which it is declared upon as the basis of a legal liability. *Jeffersonville, etc., R. Co.* v. *Hendricks* (1872), 41 Ind. 48; *Chicago, etc., R. Co.* v. *Bills* (1889), 118 Ind. 221; *Ohio, etc., R. Co.* v. *Stein* (1894), 140 Ind. 61; *Terre Haute, etc., R. Co.* v. *Zehner* (1906), 166 Ind. 149, 3 L. R. A. (N. S.) 277; *Indianapolis St. R. Co.* v. *Fearnaught* (1907), 40 Ind. App. 333; *Mitchelltree School Tp.* v. *Carnahan* (1908), 42 Ind. App. 473.

Appellant's counsel insist that this amended complaint alleges a new and distinct wrong from that set up in the original. The claim is made that the complaint upon

6. which the action was first tried proceeded upon the theory that the action was based upon section one of the employers' liability act (Acts 1893 p. 294, §8017 Burns 1908), which applied to corporations other than railroads, and that appellee was injured by the negligence of a servant to whose orders he was bound to conform and did conform. This section provided "that every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injury suffered by any employe while in its service, * * * in the following cases: * * * Second. Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employe at the time of the injury was bound to conform, and did conform." This statute, so far as applicable to corporations other than railroads, was by this court, on March 1, 1907, held to be unconstitutional and invalid. *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 14 L. R. A. (N. S.) 418.

Appellant, in arguing the question that this action is barred, says: "Courts, in undertaking to determine in specific cases whether a new cause of action is stated, have established certain tests. Among those are the following:

Whether the allegations of the new complaint are such that
a defendant is deprived of a defense, whether the evidence
that would have proved the old complaint will prove the
new, whether the new allegations if in a reply would have
amounted to a departure, whether the amended complaint
sets up a title not before asserted, whether a judgment on
the first complaint would be a bar to a judgment on the
second.''

The record discloses that appellee recovered a judgment
under his original complaint as amended. From this judg-
ment appellant successfully appealed to this court. *Oölitic
Stone Co.* v. *Ridge* (1908), 169 Ind. 639. In this latter ap-
peal appellant urged that the employers' liability act, ex-
cept as it applied to railroads, was unconstitutional, and
that therefore the court erred in overruling its demurrer to
the complaint and its motion for a new trial. On the other
hand, appellee in that appeal insisted that the complaint
stated a good cause of action at common law, as well as
under the employers' liability act, and that the judgment
should not be reversed, even if the act in question was uncon-
stitutional. After the appeal, and subsequent to the filing
of the briefs therein by the parties, the decision in *Bedford
Quarries Co.* v. *Bough, supra,* holding the employers' lia-
bility act unconstitutional and invalid, so far as it applied
to corporations other than railroads, was announced. In
the appeal taken by appellant, this court held that inasmuch
as it appeared that the theory adopted by the trial court was
that the action was brought under the second subdivision of
section one of the employers' liability act of 1893, that such
theory must be adhered to in the appeal, and as that act was
unconstitutional the trial court erred in overruling appel-
lant's demurrer to the amended complaint and overruling
its motion for a new trial.

The original complaint, with some exceptions, virtually
sets up the same facts as does the amended complaint. It
shows, in like manner as does the latter, that appellee was

employed by appellant to serve as a "mudder" in its quarry, that his sole duty consisted of shoveling mud and water from the floor of the quarry, and that his employment was known as that of a "mudder." It discloses the channeling of the large stone here involved, and the same excavation or space which was made after the stone had been quarried and turned over, and that the same wall, bank or seam of dirt, mentioned in the complaint herein, remained unsupported after the stone had been channeled. It also exhibits the fact that Peter Deckard was the representative of appellant, or, in other words, was its vice-principal, and that in giving the order therein alleged he acted for appellant and was invested by it with full power and authority to order and direct appellee in the premises; that in pursuance of such authority said Deckard ordered and directed appellee to quit the work for which he had been hired, and which at the time he was performing as a mudder, and to go into the space from which the stone had been channeled to remove the slips, wedges and tools that had been used in quarrying the stone; that appellee obeyed the order, and while engaged in carrying it out he sustained the same injuries and in like manner as alleged in the amended complaint.

It is further shown that at the time he was ordered to go into the excavation in question, the wall or ledge was unsupported, unsafe and dangerous, all of which was unknown to him, but was well known at that time and prior thereto to appellant, but that the latter gave him no notice or warning of the attendant danger at the time it ordered him to go to work in the place in question. The only intimation or hint in the original complaint that appellee was attempting to base his right of action upon the employers' liability statute, instead of predicating it upon common law, was the allegation that he "was bound to conform and did conform" to the order of Deckard. Eliminating this averment, it may be said that the complaint now before us

virtually consists of a restatement of the facts set up in the former complaint, going to show appellant's liability under the common law.

Both the former and the present complaints involve the same transaction and injury. The gravamen of the action, as disclosed by both complaints, is the personal injury sustained by appellee, due to the fact that he was by appellant ordered outside of his employment to work in an unsafe and dangerous place, without any warning in respect to that fact, and by reason thereof suffered the injuries of which he complains.

7. It is manifest that a judgment rendered upon the former complaint would bar a recovery on the

8. amended complaint. Back of all, however, it must be said that appellant had no action whatever under the statute in question, for, as shown, it was unconstitutional and invalid, and therefore afforded him no right of action. As was said by this court in *Bedford Quarries Co.* v. *Bough supra*, "For if such a law is unconstitutional it is no law and cannot be used to give appellee a right of action against appellant."

The same doctrine is asserted in Cooley, Const. Lim. (7th ed.) 259, where the author says: "When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. * * * [It] is to be regarded as having never, at any time, been possessed of any legal force." To the same effect is the holding of this court in the cases of *Strong* v. *Daniel* (1854), 5 Ind. 348, *Sumner* v. *Beeler* (1875), 50 Ind. 341, 19 Am. Rep. 718, and *Johnson* v. *Board, etc.* (1895), 140 Ind. 152, 156.

It was not the decision of this court in the case of *Bedford Quarries Co.* v. *Bough, supra*, that rendered the em-

ployers' liability act unconstitutional, but that decision was merely an exposition of the fact that it was in conflict with some provision of fundamental law, and therefore void. The act was equally as void before that decision as it was thereafter.

It follows, that there was no statute upon which appellee could predicate a right of action against appellant. If, under the facts alleged in his original complaint, he had no cause of action against appellant at common law, he had no right of action whatever. Consequently, the only legitimate theory upon which he could proceed in his original complaint was that there was a liability in his favor against appellant under the common law.

It is manifest that the lower court in the former trial was mistaken in regard to the law, and erred in submitting the case to the jury as an action based upon the employers' liability act, for, as shown, there was no such statute existing. For this reason alone the argument of counsel for appellant, that the amended complaint is a departure from the original action, which, as insisted, was based upon the statute in question, and that the amendment introduced into the case a new and independent right of action, is wholly untenable.

As previously said, the amended complaint amounted to but a restatement of the facts in the original complaint, going to show a right of action in favor of appellant under the common law. Therefore, under the general rule, it related back to the time when the action was commenced by the original complaint. *Blake* v. *Minkner* (1894), 136 Ind. 418.

The amendment cannot be said to have deprived the appellant of any defense which he had as against the action stated in the original complaint. The same evidence would support both the original and the amended complaint.

For the reasons herein stated, the amended complaint must be held to relate back to the time when the action

was originally commenced, hence there is no room for interposing the statute of limitation in bar of this suit.

It appears that the trial court gave to the jury on its motion and at the request of each of the parties a long series of instructions. Appellant criticizes as erroneous some of the instructions given by the court, and complains of the refusal to give some of those which it tendered. An examination of the court's charge discloses that it is quite favorable to appellant, and fully presents, under the evidence, its theory of the case. Considering the instructions of the court in their entirety, and not by detachments or fragments, it is apparent that appellant has no ground for complaining in respect thereto. Some of the instructions which the court refused to give, over the request of appellant, appear to be covered by those given, and consequently were properly refused upon that ground; while others seem to have been refused because appellant was not entitled to have them given as written and requested.

On the trial in the lower court appellee testified in respect to pains which he had in his head and in his spine, and generally in regard to how the injuries that he received affected him. Over the objections of appellant he was permitted to answer the following questions: (1) Q. "State what, if any, trouble you have in keeping your mind on any one thing for any length of time." The witness answered this question by saying that it made him sick to study about one thing. (2) Q. "What, if any, impairment have you in your memory in remembering things since that injury to your head?" The answer to this question was: "I cannot remember things as well." (3) Q. "After your injury, you may state what, if any, cough you had after being hurt, and how long it lasted." The witness testified that after the injury he coughed for two years.

Appellant's counsel objected to the first question, for

the reason advanced that there were no allegations in the complaint of any such injury or ailment; that it was an attempt to prove a matter that was not within the issues, and a fact of which appellant had no knowledge, and which it was not prepared to meet. Substantially the same objections were made to the second and third questions. Counsel insist that the testimony elicited by these questions goes to prove special damages; that such damages cannot be said to be the natural and probable consequences arising out of the injuries alleged in the complaint, and therefore, in order to be admissible, should have been specially averred by the complaint.

It is claimed that there are no allegations whatever in the amended complaint that appellee's injuries, either directly or indirectly, affected his mind or mental faculty, or that he was afflicted with a cough as a result of the injury. It will be noted however, that the complaint alleges that the dirt, clay, mud and rock in question, by which he was injured, fell upon him with great weight and force, covering him to the depth of four or five feet; that he was crushed and bruised about his back, shoulders, head, breast and abdomen; that one leg and three of his ribs were broken, that his skull was crushed, and that a sharp piece of rock was forced up through his mouth and tongue into the roof of his mouth and that he was otherwise greatly bruised, cut, lacerated and wounded, and thereby permanently disabled and injured, etc.

We are not unmindful of the rule which denies appellee the right, in this case, to prove damages which did not probably and necessarily flow from the injuries which he suffered, as alleged in his complaint; or, in other words, that damages which can be said to be outside of the usual and natural consequences of the injury which appellee sustained by reason of the wrongs of appellant should have been specially pleaded in order to

enable appellant, at the trial, to meet the evidence in respect thereto. We must, however, deny the contention of appellant's counsel, that the complaint in this case is not sufficiently comprehensive in its averments in regard to the injury sustained so as to permit the admission of the testimony in question, or, in other words, to authorize appellee on the trial to show the character of the injuries sustained and what may be said to be the probable and natural results thereof.

Counsel apparently assume that the impairment of appellee's memory, and the cough with which he was afflicted, must be regarded as special damages which should have been alleged or set up in the complaint in order to admit evidence and proof thereof. The authorities affirm that the rules of pleading do not exact that every effect or result due to a particular injury or injuries, shall be set forth in the complaint by the plaintiff in an action like this in order to recover on account thereof. In support of this rule see: *Ohio, etc., R. Co.* v. *Selby* (1874), 47 Ind. 471, 17 Am. Rep. 719; *Wabash R. Co.* v. *Savage* (1887), 110 Ind. 156; *Ohio, etc., R. Co.* v. *Hecht* (1888), 115 Ind. 443, and authorities cited; *Denver, etc., Railway* v. *Harris* (1887), 122 U. S. 597, 7 Sup. Ct. 1286, 30 L. Ed. 1146; *Lake Shore, etc., R. Co.* v. *Ward* (1891), 135 Ill. 511, 26 N. E. 520; *Babcock* v. *St. Paul, etc., R. Co.* (1886), 36 Minn. 147, 30 N. W. 449; *International, etc., R. Co.* v. *Pina* (1903), 33 Tex. Civ. App. 680, 77 S. W. 979; *Montgomery* v. *Lansing City Electric R. Co.* (1894), 103 Mich. 46, 61 N. W. 543, 29 L. R. A. 287; *Ehrgott* v. *Mayor, etc.* (1884), 96 N. Y. 264, 48 Am. Rep. 622; *Johnson* v. *McKee* (1873), 27 Mich. 471; *City of Chicago* v. *McLean* (1890), 133 Ill. 148, 24 N. E. 527, 8 L. R. A. 765; 5 Ency. Pl. and Pr. 746-749.

The case of *Denver, etc., Railway* v. *Harris, supra,* was an action for personal injuries. Evidence in that case was held to be admissible to show that plaintiff had lost the power to beget children in consequence of his injury, al-

though the complaint did not specify such loss of power as one of the results of the injury.

*Lake Shore, etc., R. Co.* v. *Ward, supra,* was an action for personal injuries. The complaint alleged that the plaintiff was bruised, hurt and wounded, that bones of her body were broken, and that she was grievously wounded and became sick and sore. Under these allegations, evidence to show that her injuries were so serious as to prevent her from marrying was held admissible.

In the case of *Babcock* v. *St. Paul, etc., R. Co. supra,* it was averred that the plaintiff, by reason of the personal injuries sustained, had been rendered sick, lame and sore, and unfitted for manual labor, and had suffered great pain of body and mind. It was held that these averments were sufficient to admit evidence to show that the injury complained of had caused nervous prostration, spinal irritation and torpidity of the liver, and were sufficient to apprise the defendant what plaintiff expected to prove.

In the case of *Johnson* v. *McKee, supra,* the court said: "When the defendant was informed that damages were sought for sickness and disorder, and their attendant expenses, as well as for wounds and bruises, he was bound to expect evidence of any sickness the origin or aggravation of which could be traced to the act complained of."

The case of *City of Chicago* v. *McLean, supra,* was an action for personal injuries. The declaration alleged that plaintiff suffered "great pain and agony." On the trial the plaintiff was asked the following question: "How has your mind been since the time of the injury—your faculties?" The answer was "Very poor; very different from what it was before." It was claimed by defendant that this evidence went to show special damages, and was not admissible because it had not been specially pleaded. This contention was denied, and in answer thereto the court said: "In the first place, the language of the declaration is broad enough to cover such effect upon the mind as may

have resulted from the injury to the body. * * * In the second place, the plaintiff is always entitled to recover all damages which are the natural and proximate consequence of the act complained of; and those damages which necessarily result from the injury are termed general, and may be shown under the general allegations of the declaration. Only those damages, which are not the necessary result of the injury, are termed special and required to be stated specially in the declaration. * * * But the body and mind are so intimately connected that the mind is very often directly and necessarily affected by physical injury.''

We conclude that under the allegations of the complaint the admission of the evidence in question was authorized. It is not unreasonable to assert that the impairment of appellee's memory and the cough with which he was afflicted— all of which appear to have followed the injuries which he sustained—were results which may be naturally and probably traced to the fact that he was injured in his head, breast, back and shoulders, etc. It follows that the court did not err in admitting the evidence in question.

In answer to the interrogatories, the jury expressly find, among others, the following material facts: Appellee did not see that the bank or ledge where he was ordered to work was unsupported after the stone in question had been cut and turned away. The place to which he was ordered and in which he was working at the time he received the injuries was dangerous, by reason of the stone's being turned down, leaving the dirt in the dirt seam unsupported. Appellee was employed by Peter Deckard. the ledge boss for appellant, as a "shoveler" or "mudder" at a wage of $1.25 a day. It was his sole duty as such employe to shovel up loose spalls, mud and dirt from the floor of the quarry. It was no part of his duty as a shoveler or mudder to pick up the slips, wedges and tools used to loosen or break stones from the floor of the quarry. Deck-

ard, as ledge boss, had full power and authority from appellant to order and direct appellee, and the latter was ordered away from his work in which he was engaged by said Deckard, and ordered to go in behind the large stone—in the place where he was injured—and pick up slips, wedges and tools that were used by the stone-breakers in quarrying said large stone. He was bound to obey this order of Deckard's and did obey it, and while at work in picking up the wedges and tools, pursuant to said order, he was injured, as charged in the complaint. Before giving the order in question no inspection was made by Deckard, or any one on behalf of appellant, to ascertain if the dirt, mud, rock or debris, which fell upon and injured appellee, was liable to fall or cave in, and appellee had no notice of the danger of the place in which he was ordered to work and in which he was injured.

The insistence of appellant's counsel that, under these circumstances, appellee assumed the risk or danger to which he was subjected by appellant's order, -is wholly untenable. The rule of assumption of risk does not apply where, as in this case, the servant is by the master ordered to do some designated act or work outside of that which he was employed to perform and away from the place of the work which he was engaged to perform, and where the danger to which he is exposed is at the time not known to him. *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 6 L. R. A. 584, 16 Am. St. 372; *Diamond Block Coal Co.* v. *Culbertson* (1906), 166 Ind. 290, 298; *Clark County Cement Co.* v. *Wright* (1897), 16 Ind. App. 630, and cases cited; *American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644.

The contention of appellant's counsel that Deckard in giving the order to appellee was a fellow servant of appellee, and therefore the injuries which the latter sustained are due to the negligence of a fellow servant, and therefore recovery cannot be upheld, is, under

the facts, wholly untenable. Deckard, at least in giving the order in question to appellee, was, under the facts in the case and the law applicable thereto, the representative of appellant, the master. Or, in other words, as authorities affirm, he was a vice-principal. Deckard in giving the order was not performing or discharging any duty that he owed to appellant, his master, but he was acting for and in its behalf by virtue of the authority with which it had invested him. That in giving the order in question he was at least its representative, and not a fellow servant in common with appellee, is fully sustained by the following cases: *Taylor* v. *Evansville, etc., R. Co., supra; Nall* v. *Louisville, etc., R. Co.* (1891), 129 Ind. 260; *Louisville, etc., R. Co.* v. *Hanning* (1892), 131 Ind. 528, 31 Am. St. 443; *Hoosier Stone Co.* v. *McCain* (1892), 133 Ind. 231; *Indiana etc., R. Co.* v. *Snyder* (1895), 140 Ind. 647; *Louisville, etc., R. Co.* v. *Heck* (1898), 151 Ind. 292; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664.

There is no room for the contention of appellant that the damages in this case are excessive. Appellee at the time he was injured was twenty-seven years of age. Immediately after the accident he was confined to his bed for a year on account of the injuries. The evidence further shows that he is a "physical wreck," unable to work; that he will be crippled during his life, and, generally speaking, permanently disabled. There is nothing in the record tending to disclose that the jury in awarding the damages was actuated by prejudice or corruption.

We have considered all the questions presented by appellant, but find no reversible error. In fact, under the evidence, we are impressed that the recovery in favor of appellee is a correct result.

The record shows that this case has been thrice tried and upon each trial appellee prevailed, and on each trial the award of damages was increased. It seems that this long-

drawn-out litigation ought to be ended, and that the best interests of both parties will be subserved by a termination thereof.

Judgment affirmed.