PECOS & N. T. RY. CO. v. COFFMAN.

(Court of Civil Appeals of Texas. Amarillo. May 24, 1913. Rehearing Denied Nov. 1, 1913.)

1. DAMAGES (§ 157*)—PLEADING.

Under a general allegation of damage, evidence is admissible of all damages which naturally and necessarily result from the wrongful act, but if the damages sustained do not necessarily result from the negligent act, plaintiff must allege the particular damage, unless the law infers such damage from the facts alleged.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 429–438, 440, 447, 449–453; Dec. Dig. § 157.*]

2. DAMAGES (§ 158*)—PLEADING.

Under allegations of the petition in a personal injury action that the injury caused the concussion of plaintiff's spine, and of the nerves and muscles connected therewith, causing the loss of sensation and mental and physical suffering, evidence of the nature of traumatic hysteria, and that plaintiff might be so affected, was admissible.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 441–444; Dec. Dig. § 158.*]

3. APPEAL AND ERROR (§ 978*) — REVIEW — DISCRETION OF COURT—NEW TRIAL—MISCONDUCT OF JURY.

The exercise of a trial judge's discretion in granting or refusing a new trial for misconduct of the jury, under Acts 29th Leg. c. 18, is of the same nature as the discretion vested in the trial court in other cases, and that court can reach a safer conclusion on the question by examining the jurors than can the appellate court from the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig. § 978.*]

4. APPEAL AND ERROR (§ 1002*)—FINDINGS—CONFLICTING EVIDENCE.

A finding of fact on a controverted issue is binding upon the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

5. EVIDENCE (§ 127*)—DECLARATIONS AS TO PAIN.

In an action for damages for personal injuries, statements of plaintiff as to his pain and suffering made to nurses, etc., were admissible in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 377–382; Dec. Dig. § 127.*]

6. APPEAL AND ERROR (§ 216*)—OBJECTIONS AT TRIAL—REQUESTS FOR INSTRUCTIONS.

Any error in an instruction in a personal injury action to find for plaintiff if the jury found that he received "any injuries as alleged in his petition," in that it did not limit plaintiff's right to recover to the injury specifically alleged, was not an error of omission, and defendant cannot complain thereof in absence of a requested instruction calling the court's attention to the matter.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216.*]

7. TRIAL (§ 251*)—INSTRUCTIONS—APPLICABILITY TO ISSUES.

A request to charge in a railroad passenger's action for personal injuries, which excluded traumatic hysteria as an element of recovery when it was properly an issue in the case, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

---

8. CARRIERS (§ 318*)—PASSENGERS—ACTIONS—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

Evidence in a railroad passenger's action for personal injuries by running into an open switch *held* to show negligence by the trainmen.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

9. APPEAL AND ERROR (§ 1056*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In an action for injuries to a railroad passenger by running into an open switch, any error in excluding evidence that the switch lock was found a certain distance from the switch target after the accident was immaterial, in view of the showing of negligence in running the train into the switch.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. § 1056.*]

10. APPEAL AND ERROR (§ 1052*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Appellant cannot complain of admission of evidence, where the same evidence was given by the same witness afterwards without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. § 1052.*]

11. EVIDENCE (§ 550*)—EXPERT TESTIMONY.

A physician, who had never seen plaintiff after he was injured, but based his testimony on the depositions of two other experts, was improperly allowed to testify that a competent masseur in treating plaintiff would be able to observe symptoms of paralysis or grave physical defects; the witness not having himself observed plaintiff's condition.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2366, 2367; Dec. Dig. § 550.*]

12. TRIAL (§ 426*)—CURING ERROR—COMPROMISED VERDICT.

On the evening before judgment was rendered the jury divided the aggregate of the individual amounts favored by each juror, the quotient being $13,600, and the next morning some of the jurors favored $14,000 and some $13,000, but it was finally agreed that the disagreement between $13,000 and $14,000 should be determined by a majority vote, which was done; the majority favoring a $14,000 verdict. *Held*, that any impropriety in thus arriving at the verdict would be cured by accepting plaintiff's proffered remittitur of $1,000.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 973; Dec. Dig. § 426.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by J. J. Coffman against the Pecos & Northern Texas Railroad Company. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

Madden, Trulove & Kimbrough, of Amarillo, Terry Cavin & Mills, of Galveston, and Carl Gilliland, of Hereford, for appellant. Knight & Slaton, of Hereford, and Capps, Cantey, Hanger & Short and D. B. Trammell, all of Ft. Worth, for appellee.

HENDRICKS, J. This is the second appeal of this cause, the first having been made to the Court of Civil Appeals of the Second District, from the district court of Deaf Smith county, reported in 56 Tex. Civ. App. 472, 121 S. W. 219; the judgment of the trial court, for the sum of $17,500, upon that appeal having been reversed by said appellate court.

The appellee claims to have received certain injuries, while a passenger upon one of appellant's trains, alleging the negligence of appellant in running into an open switch and colliding with some freight cars on the siding, and claiming that by the force of the collision he was thrown from the seat in which he was sitting and against the back of another seat and to the floor of the coach.

First. By different specifications of error, and in different phases, the appellant, railway company, in its first, second, third, and fourth assignments of error, assails the action of the district court in permitting "traumatic hysteria" to become an issue in the cause as a consequential injury, principally contending that the general allegations of plaintiff's injury are not sufficiently specific to comprehend the proof of the issue. We find from this record that "traumatic hysteria" is a specific disease of the mind, often produced from shock, and the injured person may suffer from loss of sensation as a result thereof, the same as in paralysis, to the extent of producing anæsthesia of the body, believed by the plaintiff to be affected, as that the sufferer in a developed case, as indicated by this record, may stand the application of tests which in a normal body would cause flinching and pain; and, as expressed by one expert, you may "prick him with a pin without any demonstration, just the same as a man with a paralyzed nerve." Whether functional, or a seated disease; whether with or without a pathological basis, it is clear from this record, as expressed by Dr. Maguire, an expert witness for appellant, traumatic hysteria "often follows a shock, injuries, or accidents or things of that kind," and "persons suffer a loss of sensation and absence of power in the motor nerves to different portions of the body from that element superficially, very similar to that which follows a destruction of the nerve cells, sometimes both of motion and sensation"; and, as expressed by Dr. Herzel, appellee's witness, traumatic hysteria "is a serious trouble, and affects both motor and sensuory nerves * * * and is hysteria produced from an injury, * * * and they use the word 'traumatic' because the man may be in an accident, and he receive a fright at the same time, and in such hysteria he refers to that particular part of the body, but the disease is in the brain, and it remains with him for years." The testimony of this disease was principally injected into this record by the appellant, as it believed at the trial, and contends now, that evidence of such a complaint was not within the scope of appellee's pleadings sufficiently to make a presentation of such issue to the jury, and presented by appellant at the trial upon the theory, if appellee was telling the truth as to his sensa-

tions, aches, and his pains, he may have been suffering from such a complaint, and not from any "serious spinal cord ailment described by his doctors as emningio mielitis, and sclerosis of the cord," and did not begin to object to the testimony as supporting an issue in the cause until Dr. Herzel, one of appellee's witnesses, on direct examination, in rebuttal, testified rather abstractly, as shown by this record, in regard to this specific complaint. However, whatever the source of the testimony, when the matter finally developed, the solution of it as an admissible issue in the cause is referable to the sufficiency of appellee's pleadings.

[1] The general rule appropriate to this subject is: "The general allegation of damages will suffice to let in proof and to warrant a recovery of all such damages as naturally and necessarily result from the wrongful act complained of. * * * But where damages actually sustained do not necessarily result from the act complained of, and consequently are not implied by law, the plaintiff must state in his declaration the particular damage which he has sustained, for notice thereof to the defendants"—and Justice Stayton, in the same case, in illuminating the principle, further says: "The rule, however, is satisfied when from the facts stated the law infers other fact or facts; for whatsoever the law infers from a given state of facts, the adverse party is presumed to know, and must take notice of, whether it is specially pleaded or not." Railway Company v. Curry, 64 Tex. 87.

[2] In the case of Rapid Transit Ry. Co. v. Allen, 54 Tex. Civ. App. 245, 117 S. W. 486, the Dallas Court of Civil Appeals had under consideration the testimony of an expert that the injured plaintiff was a "mental wreck." Justice Tolbert said in that case: "Among the cases of the Supreme Court of this state Railway Co. v. McMannewitz, 70 Tex. 73 [8 S. W. 66] especially seems to be in point; for, if a heart disease can be necessarily or legally implied from injuries to the spine, chest, head, and limbs, we see no reason why the mental condition in which the physician says he found the appellee may not likewise be inferred or implied from her shattered nervous system, and the injury alleged to her head and spine." In the case of International & Great Northern Railway Co. v. Pina, 33 Tex. Civ. App. 680, 77 S. W. 979, appellee's allegations were that he was greatly bruised, wounded, and mangled on his head, arms, abdomen, back, and legs, and the contention of appellant in that case that the allegations were not sufficient to permit proof of fits and spasmodic attacks, as a result of a congestive condition of the brain, also the evidence of impairment of his eyesight, was overruled. In this latter case, Justice Fly quoted the case of Tyson v. Booth, 100 Mass. 258, where proof of fits, without a special allegation, was permitted under the general allegation of an injury to the spine,

chest, head, and limbs. We gather from the Supreme Court of Indiana, in the case of Oölitic Stone Co. v. Ridge, 174 Ind. 558, 91 N. E. 944, this statement of the negative result of the general rule, as follows: "The authorities affirm that the rules of pleading do not exact that every effect or result due to a particular injury, or injuries, shall be set forth in the complaint by the plaintiff in an action like this in order to recover on account thereof." In that cause proof of a cough, existent for two years, and impairment of the appellee's memory, not specially alleged, was admissible under general allegations of injury to the body, and the Indiana court further said that such ailments were "results which may be naturally and probably traced to or arise out of the facts alleged that he was injured in his head, breast, back, and shoulders," etc. In this cause appellee alleges that by reason of the sudden jar of the collision, and having been thrown against the seat and floor, he sustained very severe injuries in his back, and side and thereby received and "sustained a concussion and other injuries to his spine, his spinal column, and the nerves and muscles thereof and connected and influenced and controlled therefrom, * * * and has suffered from loss of sensation, and the motor nerves in the lower part of his body * * * have become permanently injured, which has occasioned * * * partial paralysis," further alleging a progression of his injuries. He also states, very pertinent we think to the question involved, that he has "suffered from the time of his said injury at various times, both physically and mentally, and all of said injuries and sufferings have been the result of the negligence of the defendant." The allegations of the concussion to the spine and of the nerves and muscles in connection therewith, and the loss of sensation and the condition of his motor nerves and of the mental and physical suffering, with the proof that "traumatic hysteria" is often resultant from a shock to the nervous system, and the indication here of a loss of sensation of portions of the lower part of appellee's body, we think sufficiently answer the objections of appellant as to the particular controversy. We presume the principal reply would be that this complaint is not a real, but an imaginary one; if made, the logic is only partially correct, for if the appellee's condition is proven, whether considered as a nervous or mental affliction, or a compound of both, it is the result of a shock sustained at the time of the concussion, which is clearly alleged, and the whole testimony rather pointedly indicating that it may often result from the concussion alleged and proven. On the whole we think the petition is sufficiently comprehensive to admit the proof, and we overrule the first, second, third, and fourth assignments of error upon this question.

[3] Second. The thirteenth and fourteenth assignments of error raise the question that

the reading of a certain article in a local paper by some of the jury, in which a statement was made that a former verdict for $17,500 was rendered in the case, improperly influenced the jury in the present case. A careful consideration of the evidence on this matter fails to show any effect upon the jury in this respect, unless you infer it from the knowledge of the amount of the former verdict having been obtained by some of the jury. One of the jurors, who had read the article, said he had heard some of the other jurors say they had read it, and after the court instructed them not to read the local papers there was no further mention of it, and this juror, Carl, who had read the article, said it did not "cut any figure" with him in rendering the verdict. One of the jurors, Harris, remarked in the presence of another juror, Gass, and possibly in the presence of others, as appellant puts it, that upon a former trial plaintiff was awarded $17,000, but Harris was not shown to have read the paper. This was all before they had begun to deliberate upon the verdict. Gass at first was opposed to any amount, and then favored a verdict for $5,000, before he finally agreed to the final verdict, and said that the remark of Harris did not affect him. The juror Bennett, who testified, said that he had not heard anything about the matter from any source; and the juror Meggert, who also testified, stated that the remark of Juror Harris did not affect him. Harris, who was shown to have favored a high verdict, did not testify. Under Acts 29th Leg. c. 18, where a ground of a motion for a new trial is the misconduct of the jury in matters of this kind, "a new trial may, in the discretion of the court, be granted," which "discretion" Chief Justice Brown says, in the case of Railway Co. v. Gray, 143 S. W. 606, "is upon the same level with the discretion vested in the trial court in many instances," and further says that the court trying the case "could form safer conclusions from examining the jurors than this court can from the record." In that cause "one or more of the jurors stated that the plaintiff ought to have a verdict for $50,000 because the lawyers would get half," which was acted upon by the trial court adversely to the railway company, affirmed by the Court of Civil Appeals, and writ of error denied by the Supreme Court in an opinion as indicated. This is a different question than the one presented as to the verdict based upon an agreement to abide by the majority vote discussed in this opinion.

[4, 5] Third. We think the requested charge, the refusal of which is complained of in the eighth assignment, is upon the weight of the testimony; and the refusal of special charge No. 5 by the court, adverted to in the ninth assignment, is clearly harmless under the present rule, considering the whole charge, if the evidence raised such an issue. If the appellee suffered the injuries alleged, the preponderating suggestiveness of the testimony is that they are resultant from the shock and the collision, and special charge No. 6, mentioned in the tenth assignment, would have, if it had been given, excluded an issue we hold admissible; and we think the eleventh assignment of error raises a controverted issue of fact, solved by the jury, binding upon this court. The question with reference to statements made by appellee, as to his pain and suffering, to nurses and professional attendants, were adverted to, and similar statements held admissible, in the former opinion in this case, and there is so much of the testimony of a similar nature admitted without objection, we hold there is no error in this respect.

[6] The fifth and sixth assignments, assailing the charge of the court, wherein he directed the jury that if they found the negligence of the defendant, and that the plaintiff "received or sustained any injuries as alleged in his petition," to find in his favor, are, we think, untenable; the principal criticism being that the court does not limit plaintiff's right to recover the injuries specifically alleged. If error, it is one of omission, and appellant in his brief does not refer us to a requested instruction, calling the court's attention to the matter. Dallas Con. Elec. St. Ry. Co. v. Motwiller, 101 Tex. 520, 521, 109 S. W. 918.

[7] Appellant's special charge No. 3, the refusal of which is complained of in its seventh assignment, clearly excludes traumatic hysteria as an element of recovery, and if we are correct that it was an issue in the cause, such a charge would have been error.

[8, 9] Fourth. The facts in exculpation of the engineer and fireman failing to keep a lookout and negligently running into the open switch are so weak, and the testimony of the engineer and fireman, taken as a whole, in connection with the physical facts (notwithstanding the circumstances of extenuation advanced by them), are so strong, indicating negligence in running into the switch, as to practically preclude inquiry in regard to the condition of the switch, and whether the appellant was negligent in opening or permitting the same to remain open. The evidence is conclusive that the switch signal, indicating whether it is open or closed, may be seen for at least half a mile. The engineer claims his attention was distracted by a couple of loose horses driven by a man upon horseback, coming toward a crossing "at right angles to the track," the horses being some distance, but how far is not shown, from the track when first seen; and the fireman says that at this time he was working with an ejector, although he saw the horses, but this employé is not shown to have ever looked down the track or attempted to observe the switch target during this period. The engineer testifies when he first saw the horses he made a partial application of the air in order to control the train, and, as the fireman testified, after the horses turned away from the track, the

engineer released the air, "and he was then about a fourth of a mile from the end of the switch," and notwithstanding this distance, the engine ran in upon the siding, colliding with the freight cars upon the same, at a speed of about seven or eight miles an hour; they jumping from the engine for safety. At the time the engineer released the air, a quarter of a mile away from the switch, he saw the open switch and informed the fireman, according to his testimony, and explains that the air in the air chamber was insufficient to make an application for the purpose of stopping the train within the distance of about 1,320 feet, the receptacle for holding the air not having become recharged, which testimony of extenuation is quite unsatisfactory. He further testified "that during the half minute he was watching the horses" (at which time, according to the roadmaster's testimony, the switch target could have been seen), * * * he was looking right ahead, looking at the horses and down the track," and the fireman, who was partially watching the horses and working upon the ejector, during the period the switch target could have been observed never looked for the target, with reference to which it was clearly the duty of each to maintain a lookout; the arrangement of the switch signals is solely for that purpose. We do not think there was an exhibition of that high degree of care imposed upon carriers of passengers with reference to this matter; and the assignment with reference to the ruling of the court in refusing to admit the testimony by deposition of one of the railway witnesses, to the effect that the switch lock was found a certain distance from the target after the accident, if error, was, we think, an immaterial one, considering the lack of exoneration of negligence in running this train into the open switch at the speed indicated.

[10] With reference to the assignment raising the question of the inadmissibility of certain letters written by appellee to Avery Turner, the general manager of appellant, before the institution of the suit, it is persuasive that the testimony was admissible upon the issue of good faith,—a vigorous defense by appellant having been made that appellee was malingering as to his injuries; however, the same testimony by the same witness is shown to have been delivered without any objection by appellant.

[11] We do not think the testimony of Dr. Moyer was admissible; and as to the action of the court, rejecting the testimony, complained of in the twenty-third assignment of error, this witness had delivered a prognosis, and reflected opinions as to Coffman's condition, based entirely upon the testimony of two other experts contained in depositions which Dr. Moyer had read, without ever having examined, or ever having seen Coffman, and which was admitted by the court. After the admission of the opinions of Dr. Moyer, he was then asked, in substance, if a competent masseur, at a certain time, upon treatment of Coffman, would be able to detect any symptoms of paralysis if Coffman had been in the condition his (Moyer's) prognosis indicated, to which he (Moyer) answered that he believed "that a masseur under such circumstances would observe symptoms of paralysis, or at least grave physical defects," and which the court excluded. We are unable to found the admissibility of such testimony upon any principle; to permit an expert to advance an opinion as to what another man should observe, based upon a certain prognosis, which in turn is based upon testimony he has read, is an extension of expert testimony, with reference to which appellant has not pointed out the way as to its competency by any authority.

[12] This condition is disclosed under the twelfth assignment. The evening before the judgment was rendered, the jury had divided the aggregate of the individual amounts favored by each juror, and the quotient was $13,600, but did not agree upon the result. The next morning the jury were divided upon amount, some of the jurors insisting upon $14,000 and some for $13,000, the quotient amount indicated above not having been injected into the matter, at least was not agreed upon. It was finally agreed that the difference of opinion and the difference of amount between $13,000 and $14,000 should be left to a vote—whichever amount the majority voted would constitute the verdict of the jury—and, the majority being in favor of $14,000 and so voting the minority yielded to the majority without any further discussion, and the verdict for $14,000 was returned into court. The Indiana Supreme Court held in the case of Houk v. Allen, 126 Ind. 568, 25 N. E. 897, 11 L. R. A. 706 (and we quote the syllabus which properly reflects the opinion) that: "A verdict will not be permitted to stand which is the result of an agreement between the jurors after ascertaining that they are unable to unite upon a verdict to take a certain number of ballots and render the verdict in favor of the party receiving a majority of the ballots cast; the jurors favoring the party in the minority agreeing to abide by the result."

The Supreme Court of New Jersey, in the case of Ryerson v. Kitchell's Executors, 3 N. J. Law, 998, announces the same principle in a three line opinion, by saying: "This transaction was unlawful; and the judgment rendered on a verdict obtained in this manner cannot be supported." The reasoning in the Indiana case, supra, is based upon authorities involving quotient verdicts agreed to in advance, which have always been denounced, and while the countervailing reasons, in support of the validity of this verdict are strong—that it is the result of a compromise of conflicting opinions—the minority merely yielding to the judgment of

the majority, however, deferring to the authorities, supra, we will accept the remittitur of $1,000, offered by appellee in this case, in the event we conclude that the verdict for $14,000 should not have been rendered in the manner indicated. It is conclusive, however, that all the jurors agreed to the lesser sum of $13,000; and, while the rule announced in the Houk Case, decided by the Indiana Supreme Court, is not satisfactory, however, under the particular facts of this case, considering the invitation of the appellee as to the remittitur, we conclude in this particular cause to pursue the following course: The case of Railway Co. v. Gentry, 98 S. W. 226, involved the verdict of a jury which was arrived at by the minority and majority members of the jury drawing straws for the amount each side was contending for; and the members of the jury contending for the maximum amount won. There was a remittitur to the minimum amount in that case, and the cause was affirmed by the Court of Civil Appeals, and writ of error denied by the Supreme Court; and, upon the authority of that case and the statement of appellee in his brief, we reduce the judgment of the trial court to the sum of $13,000 against appellant, overruling all assignments, with the further order that all the costs of this appeal be taxed against appellee.

Modified and affirmed.