# INDIANAPOLIS TERRA COTTA COMPANY *v.* WACHSTETTER.

[No. 6,624.    Filed June 22, 1909.    Rehearing denied November 5, 1909.]

1.  PLEADING.—*Complaint.—Master and Servant.—Defective Ricks of Sacks.—Assumption of Risk.—Notice.*—A complaint alleging that defendant ordered plaintiff to work near a rick of sacks, eight feet high and piled one on the top of another instead of with broken joints, that plaintiff had no knowledge thereof, and defendant did have knowledge thereof, and that the rick fell upon plaintiff, to his injury, states a cause of action, the plaintiff being held, as a matter of common observation, to knowledge of the height of the rick but not to knowledge of the manner of piling the sacks.  p. 552.

2.  MASTER AND SERVANT.—*Fellow Servants.—Assumption of Risk. —Defective Ricks of Sacks.*—A plaintiff who checks out sacks from a car while other servants, under the direction of a foreman, rick such sacks defectively in a wareroom, and such plain-

tiff, without knowledge of such defect, and while helping to remove such sacks for use in defendant's factory, is injured by the fall of such defective rick, assumes the risk thereof, and the company is not liable whether such foreman was, or was not, a vice-principal, the proper ricking of the sacks not being a duty of the master.   Roby, J., dissenting.   pp. 553, 557.

3.  MASTER AND SERVANT.— *Dangerous Place.*— *Knowledge.*— A master who knowingly orders a servant to work in an unsafe place is ordinarily liable, regardless of how the place came to be unsafe.   p. 556.

4.  MASTER AND SERVANT.—*Dangerous Place.*—*Care Required.*— Where danger inheres in the place furnished for the servants in which to work, or where the danger inheres in the things furnished to the servants with which to work, the master is required to exercise ordinary care to detect such danger.   p. 556.

5.  MASTER AND SERVANT.—*Dangerous Place Caused by Fellow Servants.*—*Notice.*—Where the master furnishes a proper place and proper tools, but the servants improperly do their work, causing injury to one of them, the master is under no duty to inspect for such defect, nor warn thereof, and is not liable therefor, in the absence of actual notice.   p. 557.

6.  MASTER AND SERVANT.—*Employers' Liability Act.*—*Manufacturing Corporation.*—Section one of the employers' liability act (Acts 1893, p. 294, §8017 Burns 1908) has no application to a manufacturing corporation.   p. 558.

From Hancock Circuit Court; *Eugene H. Bundy,* Special Judge.

Action by Charles F. Wachstetter against the Indianapolis Terra Cotta Company.   From a judgment on a verdict for plaintiff for $1,200, defendant appeals.   *Reversed.*

*Joseph W. Hutchinson* and *William A. Ketcham,* for appellant.

*Charles B. Clarke, Walter C. Clarke, Clement M. Holderman, U. S. Jackson* and *Earl P. Sample,* for appellee.

RABB, J.—This action was brought by the appellee to recover damages for personal injuries alleged to have been sustained by him while in the service of appellant, and which are alleged to have been caused by its negligence.

The complaint was in two paragraphs.   Appellant's demurrer to each was overruled, the cause was put at issue, a

jury trial had, and judgment rendered on the verdict. Appellant's motion for a new trial was overruled. The errors assigned and relied on for a reversal are the overruling of appellant's demurrers to the complaint, and its motion for a new trial.

The substantial averments of the complaint are that the defendant is a corporation engaged in the manufacture of terra cotta; that appellee was in its employ as a laborer, and while acting within the scope of his employment, and engaged in carrying sacks of plaster of Paris from one place in appellant's factory, where they had been stored, to another place in the factory, and emptying them into a bin, he was injured by the fall of a rick of said sacks of plaster, which stood in close proximity to the place where appellee was engaged at work; that appellant, its servants and employes, had so negligently stacked said sacks of plaster that they were liable to fall; that appellee did not know of the dangerous condition of the rick of sacks, and that appellant did know of it, and with knowledge of the danger, and of appellee's ignorance of the danger, ordered appellee to do the work in the dangerous place, without warning him of such danger.

The point is made against each paragraph of the complaint that the facts averred in the complaint show that the dangers arising from the manner in which the sacks were 1. ricked were open and apparent, and that, notwithstanding the averment of the complaint that appellee had no knowledge of the danger, the facts shown by the pleading are such as charge him with notice of the condition. It is averred in the complaint that the dangerous condition arose from the height of the rick, and the manner in which the sacks of plaster were stacked, in that they were stacked one immediately on top of another, thus leaving an open interstice between the sacks, and that the nature of the material in the sacks—it being a flour-like substance—rendered the rick, eight or nine feet high, insecure; that had the sacks

MAY TERM, 1909.    553

Indianapolis Terra Cotta Co. v. Wachstetter—44 Ind. App. 550.

been ricked up with broken joints, the pile would have been solid and secure.

Appellant also makes the point that the height of the stack was a matter that appellee was bound to know, as it was open to observation, and that the fact that the sacks were piled one immediately on top of another, in place of being ricked up with broken joints, as appellee asserts they should have been, was also equally open to observation.

While it must be conceded that appellee was bound to take notice of the height of the rick of sacks, we do not think it follows that we can say, over his averment, that he did not know of the manner in which the sacks were ricked up, that the fact that they were ricked one immediately on top of another, rather than in broken joints, was open and apparent. Conditions may have been such that this fact was so obscured as not readily to be discernible.   It has been held with reference to this question, that a ''servant is expected to observe such objects only, in the absence of notice, as would in an instant convince him of their danger.''  *Johnston* v. *Oregon, etc., R. Co.* (1892), 23 Ore. 94; *Indianapolis Traction, etc., Co.* v. *Holtsclaw* (1908), 41 Ind. App. 520, and cases cited.

Appellee was not bound to make a critical examination of the manner in which the sacks were ricked up, to ascertain if there was a liability of their falling.  We think the complaint is not amenable to the objections urged against it. *New Castle Bridge Co.* v. *Doty* (1907), 168 Ind. 259; *Avery* v. *Nordyke & Marmon Co.* (1905), 34 Ind. App. 541.

Among other reasons assigned in appellant's motion for a new trial, is the insufficiency of the evidence to sustain the verdict and judgment.   The evidence shows that appellant was engaged in the manufacture of terra cotta; that it owned and operated a manufacturing establishment in the city of Indianapolis, where its work was conducted; that in this plant it employed a large number of men, some of them skilled mechanics and others common laborers; that it had fifteen different rooms in its plant, in

which different work, in the process of the manufacture of its product, was carried on; that appellant had in its service several employes who acted as foremen over different branches of the work; that appellee was one of them, and acted as foreman in the clay room; that another foreman was one Powell, who had general charge of the work carried on in the factory, with the exception of that part of it performed by skilled mechanics, who were under the charge of another foreman; that over all these the company also provided a general superintendent of the work, who had direction of all the work done in the factory, and in addition a general manager of the appellant's business, who had supervisory charge of the entire business of appellant, both that connected with the manufacturing of the product and its disposal in the market. It also appears that the company used in its business large quantities of plaster of Paris, which was received in carload lots, in sacks weighing about one hundred pounds each, and which, when received, was stored in different rooms in appellant's factory until it was needed in the work, and was taken from the storeroom as the work went on; that it was a part of the duties of the appellee and the men who worked under him and with him to handle this plaster of Paris when it was received, unload it from the cars, and store it away, and when needed in the work to take it from the storeroom and empty it into the bins where it was used; that on one occasion, about three weeks before the appellee was injured, a carload of plaster was received by the appellant, and, under the direction of Powell, appellee and other servants of appellant unloaded it from the car, appellee remaining in the car and checking the sacks as they were taken out, the other workmen handling the sacks, ricking them up in a place pointed out by Powell in the plaster room, against the west wall of the same, and on a certain cement platform. These ricks were about eight feet in height, and were closely packed together, so that each rick

supported the other. In ricking the sacks the bags were placed one immediately on top of another. Plaster of Paris is a flour-like substance, of such nature that unless the sacks are piled up so that they form a solid mass there is danger that a rick eight or nine feet in height will fall down. If the sacks are piled so that they will break joints in alternating layers, this danger will not arise, and the rick will be solid and substantial. But as the sacks were stacked up they were loose and liable to fall. All the sacks of the three outward tiers had been removed, except a few loose sacks lying upon the floor at the foot of the remaining rick, which was eight or nine feet in height. The evidence is not entirely clear as to the condition with reference to light, and the jury might have inferred that the rick was so covered with dust that its condition, with reference to the manner in which the sacks were stacked, was not easily discernible in the light existing in the room. In this condition of things, appellee was ordered by foreman Powell to remove the sacks that were lying at the foot of the rick and empty them into a bin. While he was engaged in this work the rick fell upon him, and caused the injury for which he seeks a recovery. He testified that he did not observe the manner in which the sacks were stacked upon one another; that he might have observed it if he had looked closely, but he assumed that they were properly piled. The evidence shows, and the jury find in answer to interrogatories, that Powell did nothing in reference to the piling up of the sacks, save to point out to the men working under appellee the place where the sacks were to be piled, and there is no evidence that Powell knew anything more about the particular manner in which the sacks were ricked up than did appellee.

It is earnestly insisted by appellant that the injury complained of resulted from the negligence of a fellow servant; that the work of handling the plaster of Paris was the work of a servant and not the master, and that it appears without

dispute that the act which created the danger, as alleged in the complaint and shown by the evidence, was the negligent ricking up of the sacks of plaster; that such work was clearly not the work of the master, but was the work of the servant, the performance of the duty the servant owed the master.

It must be conceded that the duty of ricking the sacks of plaster was not one which the appellant owed the servants in its employ, nor did its obligation to them require that it stand over the servant and direct him in the detail of unloading the plaster from the car and ricking it up in the plaster room. *St. Louis, etc., R. Co.* v. *Needham* (1894), 63 Fed. 107, 11 C. C. A. 56, 25 L. R. A. 833; *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, 17 L. R. A. (N. S.) 542; *Dill* v. *Marmon* (1905), 164 Ind. 507, 69 L. R. A. 163, and cases cited.

The gravamen of appellee's action, however, is not negligence in ricking the sacks of plaster. The ricking up of the sacks of plaster was an act which appellee claimed created the danger. But the negligence charged against the appellant as having been the proximate cause of his injury, was in directing appellee into a place of danger to perform his work, without warning him of the danger.

If a master sends his servant to do work in a place which the master knows to be dangerous, it is his duty to warn the servant of the danger to be apprehended, no matter how the dangerous condition originated, whether from the act or omission of the master, the act or omission of a fellow servant, or from purely accidental causes. But this rule thus broadly stated can apply only to such dangers as are actually known to the master. If such dangers are of a character that inhere in the place furnished to the servant to work in, or to the things furnished to the servant to work with, then it is the duty of the master to exercise ordinary care to know of their existence, and

guard his servant from them. And even though he does not, in fact, know of them, if he could, by the exercise of such care, have ascertained them, then he would be chargeable with knowledge of their existence. But if the dangers arose, not from any act or omission of the master, not from 5. a danger inherent in the place, or with the tools and implements and machinery furnished him to work with, but from the manner in which the servants performed their duty to the master, a transitory peril occasioned by the execution of the work, then the master is not chargeable with notice of such peril, or bound to exercise care to ascertain it, and is charged with no duty to warn his servants against it, unless he have actual knowledge of the existence of the danger at the time. *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689; *Whittaker* v. *Bent* (1897), 167 Mass. 588; *Meehan* v. *Speirs Mfg. Co.* (1899), 172 Mass. 375; *Howard* v. *Denver, etc., R. Co.* (1886), 26 Fed. 837; *St. Louis, etc., R. Co.* v. *Needham, supra; Chicago, etc., R. Co.* v. *Barker, supra; Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680.

Here the evidence shows that the danger to be apprehended from the falling of the rick of sacks filled with plaster of Paris was clearly a transitory one, occasioned by 2. the manner in which appellee's fellow servants piled up the sacks of plaster, and that the danger arose from the work of the servants and not from any act of omission or commission of the master. The removal of the plaster from the car, the stacking of the sacks in the plaster room, and the work of subsequently taking the sacks from this store and emptying them into bins for use, were minor details of the work in which appellant and its servants were engaged; and the supervision of these minor details of its business appellant insists was a delegable duty. Whether it was or was not cannot affect the result.

It is the theory of appellee's case that foreman Powell stood toward the appellee in the relation of vice-principal,

and that he could, by the exercise of ordinary care, have learned the danger arising from the manner in which the sacks of plaster were ricked up.  It was not charged in the complaint, or attempted to be proved upon the trial, that Powell, or any one else representing the appellant, had any more actual knowledge regarding the particular manner in which the sacks were piled than did the appellee; and if it be conceded that Powell was a vice-principal, and represented appellant in the matter, it was not his duty to stand over the men engaged in unloading the car of plaster to see that they properly performed their work, and no liability could be imposed upon the master for an injury received by a servant on account of the negligent performance by a fellow servant of the work in which they were jointly engaged, unless the master had actual knowledge of the danger arising therefrom and the injured servant did not, and the circumstances were such as imposed upon the master a duty to warn the servant of the danger, and he failed in the performance of such duty.  These circumstances do not appear in this case.

6.    Section 8017 Burns 1908, Acts 1893, p. 294, §1, has no application to this case, and it is not a case in which the injured servant was taken from his ordinary work and set to do different work at a different place.

We think the evidence fails to make a case entitling the appellee to recover.

Judgment reversed, with instructions to the court below to grant a new trial.

Hadley, C. J., Comstock and Watson, JJ., concurring. Myers, J., concurring in conclusion.  Roby, P. J., dissenting.