SOUTHERN RAILWAY COMPANY ET AL. *v.* HOWERTON.

[No. 22,656.   Filed June 23, 1914.   Rehearing denied October 8, 1914.]

1.  MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Negligence of Fellow Servant.—Presumptions.—*Under the allegations of a complaint for injuries to a railroad employe by the explosion of a torpedo, that through the negligence of defendant the track where plaintiff was required to work was rendered unsafe by placing a signal torpedo on the rail and permitting it to remain there without notice or warning to him, it will not be presumed that the placing of the torpedo and permitting it to remain there was the negligence of a fellow servant. p. 214.

2.  MASTER AND SERVANT.—*Injuries to Servant.—Negligence.—*While it may be presumed that a signal torpedo was properly placed upon a railroad track, and though it had not discharged the purpose for which it had been placed, it would not follow that it was not negligence to permit it to remain there without notice or warning to an employe engaged in the operation of a push car, who was injured by the explosion caused by his car running over same, since manifestly such torpedo was not essential in the use of such push car. p. 214.

3.  MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Negativing Assumption of Risk.—*A complaint alleging that plaintiff, who was injured by the explosion of a signal torpedo while he was operating a push car over defendant's railroad, was under no duty to keep the track in a safe condition, that he had no knowledge of the torpedo, had defective eyesight, and could not discover the torpedo by the use of ordinary care, is not open to the objection that plaintiff assumed the risk of injury from such torpedo. p. 215.

4.  MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Violation of Duty to Warn.—*Where the complaint in a servant's action for personal injuries shows a situation of danger and circum-

stances under which it was the master's duty to warn the servant, the duty and its violation are sufficiently pleaded by an allegation of negligent and careless failure to give the warning.  p. 215.

5.  MASTER AND SERVANT.—*Injuries to Servant.—Negligence.—Failure to Warn Servant.*—Where a master has knowledge of a situation of danger created by it, which the servant must encounter, and of which he is ignorant, and which is not obvious and not discoverable by him in the exercise of ordinary care, all of which is known to the master, and there is time to warn the servant of such danger, a duty to warn arises, and a failure to do so is negligence.  p. 215.

6.  MASTER AND SERVANT.—*Injuries to Servant.—Proximate Cause.—Complaint.*—Under a complaint in a servant's action for personal injuries, showing that the dangerous condition which produced the injury was unknown to him and could not have been discovered by him in the use of ordinary care, and that the facts and circumstances were such as to make it the master's duty to warn him, but that no warning was given, the master's failure to warn must be deemed the proximate cause of the injury, and the complaint is sufficient without expressly averring that such was the proximate cause.  p. 215.

7.  COURTS.—*Jurisdiction.—Federal Statutes.*—The State courts have concurrent jurisdiction to recognize and enforce the liabilities prescribed by the Federal Employers Liability Act.  p. 217.

8.  COMMERCE.—*Employers' Liability.—State and Federal Laws.*—The Federal Employers Liability Act of April 22, 1908 (35 Stat. at Large §65), and the amendment of April 5, 1910 (36 Stat. at Large §291), supersede the State laws in all respects which the Federal act embraces, and hence control in an action against a railroad engaged in interstate commerce for injury to an employe while engaged therein.  pp. 217, 220.

9.  MASTER AND SERVANT.—*Injuries to Servant.—Federal Statutes.—Assumption of Risk.—Fellow Servant Rule.*—Under the Federal Employers Liability Act, assumption of the risk remains as before, except as modified by the application of §4 of the act to Federal statutes, while the fellow-servant rule of the common law is abrogated.  pp. 219, 220, 227.

10.  COURTS.—*Effect of Decisions.—Decisions of United States Courts.*—The decisions of the Supreme Court of the United States within its domain, are binding on the state courts.  p. 219.

11.  APPEAL.—*Trial on Wrong Theory.*—Where the only cause of action stated in the complaint was under the Federal Employers Liability Act, and it was sufficient upon that theory, but was erroneously tried upon the theory that the complaint stated a common-law action, which was more favorable to appellants than

the correct theory, and plaintiff was required to prove all the facts that would have been essential had the case been tried upon the proper theory, the mere fact that it was tried upon the theory of an action at common law is not of itself sufficient to work a reversal and will be regarded as a mere irregularity which does not bring the cause within the line of cases requiring a cause to be established and sustained upon a single definite theory. p. 220.

12. MASTER AND SERVANT.—*Injuries to Servant.—Trial.—Instructions.*—An instruction stating that it was the duty of the master to exercise ordinary and reasonable care and skill to make safe plaintiff's place of work, and one stating that the law requires the master to furnish the employe a safe place to work, in effect making him an insurer, are inconsistent and misleading. p. 228.

13. MASTER AND SERVANT.—*Injuries to Servant.—Trial.—Instructions.—Applicability.*—In a servant's action for personal injuries, where, under the facts disclosed, there were questions of whether there was a neglect of duty owing by the master, that is, whether there was any duty to warn, or whether the injury arose from a risk of the general service assumed by plaintiff, an instruction traveling on the theory of a nondelegable duty of the master to furnish a safe place, was inapplicable and misleading, notwithstanding other instructions fairly covered some phases of assumption of risk. p. 229.

14. APPEAL.—*Review.—Instructions.*—Where the instructions are confusing and misleading, and the special findings make manifest that the general verdict could have been found only on the theory of the master being an insurer of a safe place to work as a nondelegable duty, irrespective of assumed risk, showing that the jury was misled by the instructions, a reversal is required. p. 230.

15. APPEAL.—*Review.—Invited Error.—Instructions.*—Error in an instruction, contained also in one tendered by appellant, is not alone sufficient to warrant a reversal. p. 231.

16. MASTER AND SERVANT.—*Injuries to Servant.—Verdict.—Answers to Interrogatories.*—In a railroad employe's action for injuries from the explosion of a signal torpedo on defendant's track, caused by a push car, which plaintiff was operating, running over same, answers by the jury to interrogatories showing that plaintiff had defective eyesight, but at the time was not wearing his glasses, that the torpedo was such an object of danger as to require notice of its presence, even though it was not customary to give notice and defendant's rules did not require it, that, though such injury was unusual, it was such as to have been reasonably anticipated, and that a flagman was present in charge of the torpedo, together with a finding that plaintiff was

directed to ride where he did, forbid the rendering of judgment for defendant notwithstanding the general verdict for plaintiff. p. 232.

17. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Construction.*—While the negligence alleged in a complaint by a servant for personal injuries from the explosion of a signal torpedo on defendant's railroad track, over which plaintiff was operating a push car, was the placing and leaving the torpedo upon the track, the action in its last analysis is based on a failure to make and keep the place of work reasonably safe. p. 232.

18. MASTER AND SERVANT.—*Injuries to Servant.—Theory of Trial. —Federal Statutes.*—It is essential in the trial of a servant's action for personal injuries, to bring it within the Federal Employers Liability Act, that the complaint should show that defendant was engaged in interstate commerce and that plaintiff was injured while employed in such commerce. p. 233.

19. APPEAL.—*Review.—Invited Error.*—The giving of an instruction just the reverse of one asked can not be held invited error, though in one respect each contained the same error. p. 233.

20. APPEAL.—*Review.—Findings.—Conflicting Evidence.*—Findings on conflicting evidence as to the duties of an employe are conclusive on appeal. p. 235.

From Crawford Circuit Court; *William Ridley,* Judge.

Action by James Howerton against the Southern Railway Company and another. From a judgment for plaintiff the defendants appeal. (Transferred from the Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.) *Reversed.*

*Humphrey & Humphrey, John D. Welman, J. L. Suddorth* and *Walter V. Bulleit,* for appellants.

*Ewing & Roose, Major W. Funk, Dennis F. Seacat* and *Roby, Watson, Esarey & Salsbury,* for appellee.

MYERS, J.—This is an action begun November 23, 1908, for damages for personal injuries claimed to have been sustained by appellee while in the employ of appellants, as a track laborer, from negligence of appellants. It is alleged in the complaint that appellant Southern Railway Company is a corporation organized under the laws of Virginia, and appellant Southern Railway Company of Indiana, a corporation organized under the laws of Indiana. That the latter

company owned and operated a line of steam railway from Louisville, Kentucky, through Harrison County, Indiana, and Illinois to East Saint Louis in the latter state, and appellant Southern Railway Company owned the rolling stock and equipment used in operation of the line, and did lease, use and operate it as a common carrier for hire of passengers and freight, between the points named, under some agreement, contract or arrangement between the two companies, the nature of which is alleged to be unknown to the plaintiff; that appellee was employed as a section hand on the track in transporting rails on a push car from one point to another in Harrison County. The gravamen of the action is in not furnishing appellee a safe place to work, and so maintaining it, in that, he was put to work at pushing this car over a track on which appellants had placed signal torpedoes, of high explosive power, which rendered the use of the track for that purpose highly dangerous in doing the work with the push car, as he was directed to do it, without warning or notifying him of the presence of the torpedo, or the danger, of both which he is alleged to have been ignorant, and of which appellants were fully informed, and had knowledge, and in the course of the work, as he was directed to perform it, he was injured; that he had no experience with torpedoes, or explosives of a like nature, and did not know of the dangers attending their use on the tracks, and his eyesight was defective, and he could not see small objects at a distance of more than five feet, all of which appellants at the time knew. The torpedo is alleged to have been one and one-fourth inches in diameter, and one-fourth of an inch in thickness, of metal construction, and was placed on the rail, and the push car could not be moved without passing over it, and that in moving the push car over the track as he was directed, it ran over and exploded the torpedo, whereby metal parts of the torpedo were driven into his right leg, tearing and lacerating it, and permanently injuring the leg, so that the use of it was thereby entirely lost.

The errors assigned, and not waived, are in overruling the demurrer to the complaint, in overruling the motion for judgment upon the interrogatories and answers, and in overruling the motion for a new trial. In the attack upon the complaint, it is claimed, (1) that nothing is alleged to have been defective or out of repair in the track, and there is no showing, therefore, that the place of work was unsafe; (2) that the doctrine of furnishing a safe place to work does not apply if the place is made unsafe by other servants in carrying out the details of the work, and (3) that it is not alleged that the order to haul the rails was negligent, and, as the only negligence charged is in permitting the torpedo to remain on the track, without warning appellee of the peril, the presumption is, that the negligence was that of a fellow servant, because corporations must do such work by servants, and that a complaint must, in order to recover for the negligence of a vice principal, by its averments exclude the vice principal and even the master from the position or duties of a fellow servant. In the respects claimed, the complaint alleges that the track was in all respects safe and without danger to him in doing the work assigned to him, in the absence of torpedoes, or other dangerous or explosive materials on the track or rails, but that it was extremely dangerous to use the push car with torpedoes on the track or rails. The negligence charged is in providing an insecure, defective and unsafe place to work, in that they "placed on said track, on the north rail thereof over which he was required to pass * * * an explosive torpedo * * * composed of metal parts, and a powerful explosive, and so constructed that when said torpedo came in contact with, or was struck by any other object, it would explode with great force and danger, to any person in close proximity thereto, * * * and in allowing and permitting the torpedo to be and remain on the track and rail without barriers, guards or signals of any kind to warn him of its presence, and without warning him of its presence or of

the danger; that the track at that point was down grade, and that the push car was not provided with any brake or device to regulate the speed, and that he was instructed to control the speed in going down the grade, to sit on the side, or end of the car, and check and control its speed by using his foot in catching the ground at intervals, or to do so by using a stick or chock under the wheels, and that he was sitting on the side of the car with his feet hanging over, in order to control the car as directed, at the time the explosion occurred, by which he was injured.

As to the first proposition, it is urged by appellant that if there was nothing defective or out of order, and no allegation that the torpedo was negligently or unlawfully

1. placed on the track, or without purpose, it must be presumed that it was placed there for a proper purpose, and that until the purpose was accomplished, it would not be negligence for it to remain. *Mize* v. *Louisville, etc. R. Co.* (1907), 127 Ky. 496, 105 S. W. 908, 16 L. R. A. (N. S.) 1084, is relied on. There is no allegation in this complaint as to the purpose for which the torpedo was placed on the rail, and it may be presumed to have been for a lawful purpose, but it is alleged that without the torpedo on the rail, it was safe for appellee to push the car between the points where he was required to work, but that the defendants carelessly and negligently made it unsafe and insecure, by placing the torpedo on the rail, and permitting it to remain there without notice to him, or any warning to him of its presence. We think the facts alleged are not open to the presumption that putting the torpedo on the rail and permitting it to remain there was the negligence of a fellow servant. On appellants' own theory, that the

2. torpedo was properly there, it follows that it was there by virtue of some rule of administration, or authority of appellants, but it does not follow that it was not negligently suffered to be and remain there. Negligence or no negligence is not to be determined by the question

whether it had discharged the purpose for which it was put there, for neither the conditions under which it was put there, nor any reasons for its being there are shown. For all that appears, it may not have been necessary; if it was necessary, it does not follow that it should have been left there to be run over by the push car, for manifestly it was not essential in the use of that car.

It is also alleged that appellants knew that appellee could not operate the push car without running over and exploding the torpedo. It is also alleged that it was no part 3. of appellee's duty to keep the track or rails in safe condition and free from explosives or torpedoes; that he had no authority over other workmen, nor any connection with other servants, and under the allegations seems to have been doing a specific work, alone. As opposed to the rule in *Mize* v. *Louisville, etc., R. Co., supra,* is *Illinois Cent. R. Co.* v. *Leisure* (1906), 90 S. W. (Ky.) 269, in which a complaint similar to the one before us was held sufficient. The distinguishing feature of the two cases is, that in the Mize case there was no allegation that Mize could not by the use of ordinary care have discovered the torpedo, while in the Leisure case, as here, it is alleged that he had no knowledge, had defective eyesight, and could not discover the torpedo by the use of ordinary care. In other words, in the Mize case, the assumption of risk was treated as not having been negatived by the pleading, and the opinion is grounded on that proposition.

It is next urged that it is not alleged that it was the custom to give notice of torpedoes, or furnish barriers or guards, or that the failure to do so was the proximate 4. cause of the injury, and does not allege negligence in the failure to give notice or furnish guards, hence 5. there is not sufficient alleged to show both a duty and its violation. We do not so view the allegations. 6. It is alleged that the presence of the torpedo was dangerous, and that appellants knew it; that appellee was

informed neither of its presence nor its danger, and that they carelessly and negligently failed to notify or inform him of either fact; that they knew he must encounter this danger in performing this work, and that he did not know it, and by the use of ordinary care could not have learned of the presence or danger of the torpedo, and that appellants knew it. When there is shown to be knowledge of a situation of danger created by the master, which the servant must encounter, and of which the latter is ignorant, and which by the use of ordinary care he could not discover, and the danger is not obvious, and the master knew it, and there is time to warn, there is the duty to warn, and the failure is negligence, and under such circumstances both the duty and its violation are shown by an allegation of the negligent and careless failure to give the warning, and the failure is the proximate cause of the injury. 1 Labatt, Master and Servant §240; *Lehigh, etc., Cement Co.* v. *Bass* (1913), 180 Ind. 538, 103 N. E. 483; *Kingan & Co.* v. *Foster* (1913), 53 Ind. App. 511, 102 N. E. 103; *Republic Iron, etc., Co.* v. *Lulu* (1911), 48 Ind. App. 271, 92 N. E. 993; *Indianapolis Terra Cotta Co.* v. *Wachstetter* (1909), 44 Ind. App. 550, 88 N. E. 853; *Chicago, etc., R. Co.* v. *Wilfong* (1910), 173 Ind. 308, 90 N. E. 307; *Newcastle Bridge Co.* v. *Doty* (1907), 168 Ind. 259, 79 N. E. 485; *City of Indianapolis* v. *Cauley* (1905), 164 Ind. 304, 73 N. E. 691; *Republic Iron, etc., Co.* v. *Ohler* (1903), 161 Ind. 393, 68 N. E. 901; *Indiana, etc., R. Co.* v. *Bundy* (1899), 152 Ind. 590, 53 N. E. 175; *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 22 N. E. 876, 6 L. R. A. 584, 16 Am. St. 372. We have no doubt as to the sufficiency of the complaint.

The cause was tried in the court below on the theory of a common-law action for negligence, in failing to furnish and keep reasonably safe the place of work, and the jury was instructed on that theory, and on appeal it was not suggested in the briefs, or the points raised, that the judgment might be sustained under the Federal Employers Liability

Act of April 22, 1908, but we are informed by the opinion of the Appellate Court, and the briefs on petition to transfer, that this question was first raised in oral argument of the cause in that court, to meet the proposition of the injury being due to the negligence of a fellow servant, and unless that act can now be invoked, the judgment must be reversed.

There can no longer be any question of the concurrent jurisdiction of the state courts, to recognize and enforce the liabilities prescribed by the Federal Liability Act.

7. *Pittsburgh, etc., R. Co.* v. *Mitchell* (1911), 175 Ind. 196, 91 N. E. 735, 93 N. E. 996; *Mondou* v. *New York, etc., R. Co.* (1911), 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. Neither can there be any question under the decisions of the Supreme Court

8. of the United States, construing the Federal Employers Liability Act of April 22, 1908 (35 Stat. at Large §65), and the amendment of April 5, 1910 (36 Stat. at Large §291), that the act supersedes the state laws in the respects which the Federal act embraces. That the act is necessarily exclusive in the field to which it is addressed irresistibly appears when it is considered that no cause of action, or remedy can arise under the common law, which is not preserved and embraced within the Federal act, which embraces every common-law right and remedy which can under any circumstances arise, so far as employers engaged in interstate commerce are concerned, and goes much further, except possibly as to the questions of assumption of risk and negligence as qualified by §§3 and 4 of the act.

In *Mondou* v. *New York, etc., R. Co., supra,* it is said, after discussing the plenary powers of Congress over the general subject, "And now that Congress has acted, the laws of the States, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield", citing the cases arising under the Interstate Commerce Act. The case was followed by *Missouri, etc., R. Co.* v. *Wulf* (1913), 226 U. S. 570, 33 Sup. Ct. 135, 57 L. Ed.

355, where it was said with respect to the question whether the statute of limitations could be interposed after an amendment complying with the Federal act, "But the court was presumed to be cognizant of the enactment of the Employers Liability Act, and to know that with respect to the responsibility of interstate carriers by railroads to their employees injured in such commerce after its enactment it had the effect of superseding state laws on the subject. * * * Therefore the pleader was not required to refer to the Federal act, and the reference actually made to the Kansas statute no more vitiated the pleading than a reference to any other repealed statute would have done". Again in *Michigan Cent. R. Co.* v. *Vreeland* (1913), 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, it is said, "By this act, Congress has undertaken to cover the liability of railroad companies to their employees injured while engaged in interstate commerce. This exertion of a power which is granted in express terms must supersede all legislation over the same subject by the states. * * * It therefore follows that in respect of state legislation prescribing the liability of such carriers for injuries to their employees while engaged in interstate commerce this act is paramount and exclusive, and must remain so until Congress shall again remit the subject to the reserved police power of the states". In *St. Louis, etc., R. Co.* v. *Hesterly* (1913), 228 U. S. 702, 33 Sup. Ct. 703, 57 L. Ed. 1031, it was said, "Coming to the merits it is now decided that the act of Congress supersedes state laws in the matter with which it deals". In *Delaware, etc., R. Co.* v. *Troxell* (1912), 200 Fed. 44, 118 C. C. A. 272, it was held in a case grounded on the common law of Pennsylvania, that the suit was not maintainable under that law, the court saying, "It follows that the first suit was governed not by the law of Pennsylvania, but by the act of Congress", and it was there held that the allegations of the complaint brought the case within the Federal act. This cause went to the Supreme Court of the United States (*Troxell* v. *Dela-*

*ware, etc., R. Co.* [1913], 227 U. S. 434, 33 Sup. Ct. 274, 57 L. Ed. 586), where the decision on that question was virtually approved in this language of the Supreme Court, "If the Circuit Court of Appeals was right in its second decision that no action could have been maintained under the state law, in view of the Employers Liability Act, the fact that the plaintiff attempted to recover under that law and pursued the supposed remedy until the court adjudged that it never had existed would not of itself preclude the subsequent pursuit of a remedy for relief to which in law she is entitled". This case also arose under a claim of the bar of the statute of limitations, by shifting from a supposed common-law remedy, which did not exist, owing to its being superseded by the Federal act, to the latter, which gave a remedy. There is some language in the opinion in that case which was not necessary to the decision, which if it were the sole declaration on the subject, might leave some doubt as to just what was understood to be the rule, but the other cases we think leave it without doubt. See also, *DeAtley* v. *Chesapeake, etc., R. Co.* (1912), 201 Fed. 591.

The very recent case of *Seaboard Air Line Railway* v. *Horton* (1914), 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, goes still farther in holding that the statute referred to in §§3 and 4 of the Employers Liability Act means only Federal statutes, so that under that and prior decisions, assumption of risk remains as before, except as modified by the application of §4 to Federal statutes, and that the common law still obtains with respect to assumption of risk from defective appliances, while abrogating the fellow-servant rule of the common law. *Southern R. Co.* v. *Carson* (1904), 194 U. S. 136, 24 Sup. Ct. 609, 48 L. Ed. 907.

The decisions of the Supreme Court within its domain, are binding on this court, in addition to the fact that in analogy to the rule declared with respect to the Interstate Commerce Commission act, we conceive that there could be no other rule. We adopted the common law

of England since certain dates, as the law of the State, among other laws declared to be the law of the State, precisely as are declared the Constitution of the United States, and the acts of Congress, as to matters over which it has dominion. §236 Burns 1914, §236 R. S. 1881. There is no vested or property right in any rule of the common law, and it is as much the subject of modification by Congress within the sphere of its powers, as a State statute, and the Federal act has superseded, and in effect repealed the common-law rule of fellow servant, as to the liabilities to, and remedies of employes engaged in interstate commerce on railroads, and has modified the rules by the provisions of §§3 and 4 where Federal statutes are involved, and has otherwise left assumption of risk as it was under common-law rules. The rule is the same with respect to an act of Congress within its sphere, as in case of a domestic statute; that is, that the common law is not continued in force where the same subject is covered by a statute. *Wild* v. *Noblesville Bldg., etc., Institution* (1899), 153 Ind. 5, 53 N. E. 944; *Couchman* v. *Prather* (1904), 162 Ind. 250, 70 N. E. 240; *Wabash R. Co.* v. *McCormick* (1899), 23 Ind. App. 258, 55 N. E. 251; *Kinsel* v. *North Butte Min. Co.* (1912), 44 Mont. 445, 120 Pac. 797.

Appellee shows that he was an employe of railroads engaged in interstate commerce, and was himself engaged in the work of laying track, or assisting in doing so, and directly engaged in interstate commerce. As heretofore indicated, the cause was tried on the theory that it was a common-law action, and no different attitude was taken until the cause came on for argument in the Appellate Court, when appellee took the position for the first time, that conceding that a common-law liability was not shown, that the complaint states, and the evidence makes a cause of action under the Federal act, and that it should be applied. As against this, appellants insist that even though the complaint consists of but one paragraph, it can-

not be regarded now as stating a Federal liability, when it was tried wholly on the theory of a common-law liability, and that appellee ought not to be permitted to change his theory on appeal, in addition to the claim that the complaint is not sufficient under the Federal act. In the latter contention they are in error. All the essentials to constitute a cause of action under that act are alleged.

With respect to the instructions, none were given or requested upon the direct theory of liability under or applicability of the Federal act, and for that reason were more favorable to appellants, generally speaking, than they were entitled to have them, with the possible exception in respect to assumption of risk, which will be hereafter noticed. We are not disposed to depart in the least from the established rule of procedure, requiring a complaint to be based on a definite theory, but that does not present the question here, for there could be but one cause of action arise from the facts, and that cause under the Federal act, though some common-law defenses remain. If there could be more than one right of action embodied in the complaint, we should have no difficulty about it, but under our holding, there can be but one, and it is so conceded by appellants, though appellee insists that the judgment may be affirmed either under the common law or the Federal act. There can be no doubt that the evidence is present to affirm under the Federal act, but the question of orderly procedure is present, and being insisted on by appellants. It is doubtless true that appellants in seeking reversal are not in the same situation as appellee, insisting on affirmance. With respect to appellants, it is of course true that they could make no election as to the remedy, if the power of election existed; that was a right solely in appellee, and they were compelled to meet the case as elected by appellee, but it so happens that there was but one remedy, and it is apparent that the case was more easily met under the rules of the common law, than under the Federal statute. All the parties were bound to know

that there could be but one cause of action arise out of
the facts, and that, under the Federal act, so that the ques-
tion resolves itself into the proposition whether the court
on appeal is bound by that condition of the law, or should
it say that orderly procedure was not present; that the
cause was tried upon a theory of law which did not exist,
and that this must be done, even though all the facts are
present to authorize a recovery; that is, should the court,
in any event, say that it must be presented to a jury on
the correct theory of law applicable, even though the trial
proceeded upon a theory more favorable to appellants than
they were entitled to, and the evidence adduced makes a
case.    If appellants' rights were not properly adjudicated,
then it is clear that a new trial must be granted; if they
were, then we should be sacrificing the merits of the case
to mere procedure.    It appears to us that the case at bar
is not governed by the one definite theory line of cases,
such as *Oölitic Stone Co.* v. *Ridge* (1908), 169 Ind. 639,
83 N. E. 246, for in that, and other like cases, while there
was but one law in effect, it could not be determined whether
the recovery had not been had on the theory most favor-
able to the successful party, that is, upon the theory of
least legal resistance.    But that is not this case, for here
the recovery is had upon the theory most favorable to
appellants, and there could have been no recovery on that
theory, without the ground for recovery on the other theory
being fully laid, in addition to the fact that there is no
ground for the application of two theories, as a matter of
law, and it would therefore seem a legal solecism to say
that the cause proceeded to judgment upon a theory for
which there was no law, but that there ought not to be a
reversal for that reason, where all the allegations of the
complaint and the evidence make a case upon the only
law upon which an action could be predicated.    *Oölitic
Stone Co.* v. *Ridge* (1910), 174 Ind. 558, 575, 91 N. E. 944.
The court below was bound to know that state of the law

in dealing with the case, though it may have erred in its application. It is not a case of want of a good complaint but of irregularity in the proceedings under it.

There is some ground for appellee's contention that it was sought to make the case fall within the Federal act in the fact of the specific proof of appellants' being engaged in interstate commerce as common carriers. The cases of *Standard Cement Co.* v. *Minor* (1908), 42 Ind. App. 231, 84 N. E. 353, and *American Car, etc., Co.* v. *Applegate* (1908), 42 Ind. App. 342, 85 N. E. 724, are cited by appellants in support of their claim that a new trial should be granted, in any event, but those cases were determined on demurrers to complaints which stated no cause of action, because the law on which they were predicated, had been declared unconstitutional. It cannot be doubted that the instructions are all based on the theory of a common-law action, including those requested by the parties, hence not a single one of them otherwise touches upon Federal liability, and it is upon that ground that appellants contend, and with force, that there has been no trial under any law, and that if they are to be held, it must be upon a trial upon some theory of law, and that as it stands, appellee pleaded and tried one cause of action, or one theory of action at least, and asks the affirmance of the judgment on a cause or theory not pleaded. That however is not correct as respects the pleading, because that states a cause of action under the Federal act. But it must not be overlooked that all the instructions given were more favorable than appellants were entitled to, except as hereafter shown, in addition to the fact that there could be but one cause of action, and the facts pleaded bring the case within the Federal act. That statute was the law of the State, but the course of the action from the complaint forward proceeded upon a theory which did not exist, except in part at least, and we are urged to reverse for that reason, as being without the law. Nominally this

is true: in fact it is not true, for as to the one exception, to which the rules of the common law may apply, the court did instruct, that is, as to the question of assumption of risk. Was it more than an irregularity and presumptively harmful to appellants as to any substantial rights? It seems to us not, and that the court would not be justified in applying so technical a rule, as would have to be applied in this case, and would be justified in affirming under §700 Burns 1914, §658 R. S. 1881, provided that is the only question involved.

In *Grand Trunk, etc., R. Co.* v. *Lindsay* (1914), 223 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, the complaint in one paragraph counted on a violation of the safety appliance act, and the Employers Liability Act, and in the other, solely on the latter act, and the cause was tried, and the jury instructed under the safety appliance act. The Circuit Court of Appeals sustained the judgment, by applying the provisions of the Employers Liability Act, and this judgment was affirmed in the Supreme Court, on the authority of *Seaboard Air Line Railway* v. *Duvall* (1912), 225 U. S. 477, 32 Sup. Ct. 790, 56 L. Ed. 1171. Neither the Duvall nor Lindsay case seems to us to apply here, for the reason that in the Duvall case, while there was no reference in the complaint, answer or any instruction, to the Employers Liability Act, it is expressly stated by the court, referring to the complaint, "This states a ground of action under that act and it was so assumed by the trial court, as appears from that part of the charge relating to the effect of contributory negligence, as well as from some of the questions made in the Supreme Court." In the Lindsay case there was a direct counting on the two acts, but the trial was had in disregard of the Employers Liability Act. In *Snow* v. *Alley* (1892), 156 Mass. 193, 195, 30 N. E. 691, it is said, "Election exists when a party has two alternative and inconsistent rights, and it is determined by a manifestation of choice. *Metcalf* v. *Williams* [1887], 144 Mass.

452, 454 [11 N. E. 700]. But the fact that a party wrongly supposes that he has two such rights and attempts to choose the one to which he is not entitled, is not enough to prevent his exercising the other if he is entitled to it. There would be no sense or principle in such a rule." Citing cases. To the similar effect are, *Williamson* v. *Chicago, etc., R. Co.* (1892), 84 Iowa 583, 51 N. W. 60; *Voelker* v. *Chicago, etc., R. Co.* (1902), 116 Fed. 867; *Stockton* v. *Rogers* (1896), 39 N. Y. Supp. 400, 17 Misc. 138. In *Troxell* v. *Delaware, etc., R. Co., supra,* in a case where former adjudication was claimed, where a cause of action had been asserted under a state law, and another action was instituted, based on the Federal Employers Act, the court said, "If the Circuit Court of Appeals was right in its second decision that no action could have been maintained under the state law, in view of the Employers Liability Act, the fact that the plaintiff attempted to recover under that law and pursued the supposed remedy until the court adjudged that it never had existed would not of itself preclude the subsequent pursuit of a remedy for relief to which in law she is entitled." Citing cases, and among others the Alley case.

Argumentatively and theoretically, appellants' position is correct, but in practical administration we think it cannot be upheld to the extent of requiring a reversal of the judgment, if the other elements of liability are present, and there is no other error. The practice is far from commendable and might require a reversal in itself, in cases, if there be such, where more than one cause of action exists. The case of *Creteau* v. *Chicago, etc., R. Co.* (1911), 113 Minn. 418, 129 N. W. 855, is relied on by appellants. It will be observed however, that the opinion is grounded on the proposition that there were two causes of action possible to appellant in that case, as it expressly declined to determine whether the Wisconsin statute had been superseded by the act of Congress.

The jury finds specially, in answer to interrogatories, that appellee was one of a gang of track layers, and had worked on appellants' road at various intervals for more than twenty years; that he knew the general use of torpedoes, the purpose of their use as signals, and their construction and high explosive character; that the signal is given by the noise caused by their explosion; that the torpedo which injured appellee, was placed properly and as usual; that they are placed on the engineer's side to warn him in the management of his train, and as signals to him, and that one was so placed, and the rule is the same in flagging for track repair or relaying; that it was the duty of section men to stop, and remove and replace them after passing; that section men were provided with torpedoes to replace those which might be exploded in passing over them with hand cars; that they did not always explode in passing over them with hand, or push cars; that they are in general use on railroads; that they are likely to be found on rails at any time, or place, other than near highways and stations; that it was unusual for one to be injured by their use, and appellee's injury was unusual; that it was the duty of section men in passing over the tracks to keep a lookout for torpedoes, and that it was not customary to notify employes where torpedoes were placed, and they were taken up for the purpose of saving them for the purpose of replacing them; that the torpedo was of such danger as to require notice of its presence, and the injury was such, in the manner in which it occurred, as could have been reasonably anticipated. It is also found that one of appellee's coemployes was placed in charge of signaling trains in the course of the general work of relaying track, and he was in the place where he was required to be under the rules for signaling, that is, near the torpedo, and appellee knew those facts; but it does not appear that this signalman was engaged in signaling for push or hand cars, or removing torpedoes for them, or was discharging a duty

to them. He was signaling a train as such. It was further found that the push car had no brakes, and having reached the top of a grade by being pushed up, was coasting down, with about a dozen men riding upon it, and that the speed of the car could have been regulated had there not been so many persons on it; that appellee sat on the car with his legs and feet over the side of the car, near the northeast wheel, as the car proceeded. There is evidence that he was, under direction, using a stick to chock or regulate the speed, as he occupied that position. If the failure or negligence of the signalman to remove the torpedo was the neglect of a duty owing to appellee, his neglect would not defeat a recovery, as the act of a fellow servant, under the Federal act, or if it was the neglect of a nondelegable duty of appellants, to use ordinary care to maintain a place of safety for appellee to work, it might be regarded as such negligence as would bind appellants, we still have the question of assumption of risk, except as to cases falling within §4 of the act.

The decision of the Supreme Court of the United States in the Mondou case, has received the construction in the first judicial circuit in *Central, etc., R. Co.* v. *Bethune* (1913), 206 Fed. 868, 124 C. C. A. 528, that the Federal act limited the abrogation of the doctrine of assumed risk in such cases to instances where the violation of a Federal statutory duty is involved. The like rule was declared in *Barker* v. *Kansas City, etc., R. Co.* (1913), 88 Kan. 767, 129 Pac. 1151, 43 L. R. A. (N. S.) 1121, and in *Southern R. Co.* v. *Jacobs* (1914), 81 S. E. (Va.) 99, and is impliedly approved in *Gulf, etc., R. Co.* v. *McGinnis* (1913), 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785, in which it is said, ''The defense of assumed risk was submitted to the jury under a full and fair general charge.'' The case of *Seaboard Air Line Railway* v. *Moore* (1913), 228 U. S. 433, 33 Sup. Ct. 580, 57 L. Ed. 907, apparently approves the rule. It is also declared in *Northern Pac. R. Co.* v. *Maerkl* (1912),

198 Fed. 1, 117 C. C. A. 237, and in *Fremont* v. *Powell* (1912), 144 S. W. (Tex. Civ. App.), 1033; *Seaboard Air Line Railway* v. *Horton, supra.* We understand that it is by marking a definite distinction between negligence, and assumed risk, that the supreme court in the Mondou case, by subdivision (c) in its analysis of the departure of the Federal act from the common law, makes a distinction by §1, between negligence from which a right of action arises, without regard to the question of assumed risks in the employment, and removal of assumption of risk by §4 in case of the violation of a statute, thus apparently leaving the question of assumed risk as it was before, with the one exception embodied in §4, that is, that the ordinary rules of assumed risk still obtain under the Federal act. The charge of negligence here is not one of "defects or insufficiency" in the track or appliances, unless it be that the track became unsafe by reason of the torpedo being placed and allowed to remain, and unless it appears to be a duty owing to appellee, to remove it, under his employment, and the risk assumed by him, so as to make the failure to remove it the negligence of a fellow servant, or the delegation of the duty of ordinary care to keep the place safe, a case would not be made under the complaint.

The court by requested instruction No. 5 of appellee, charged "that the duty which rests upon an employer to exercise ordinary and reasonable care and skill to

12.  make safe the place of work, is a duty which the employer can not delegate, and the employer cannot delegate this responsibility by delegating the duty of looking after and providing a safe place to any other person. And if the employer delegates such duty to another, such person acts for the employer, and if such duty is negligently performed, the employer is liable." By instruction No. 4 given by the court of its own motion it is charged, "that the law requires the master to furnish the employe a safe place in which to work, and the master is required to use ordinary

care in furnishing such place; this means the premises where
the work is being done, and does not mean or include the
negligent act of a fellow servant, by reason of which the
place is rendered unsafe or dangerous, unless it is shown
that the master had committed the performance of his duty
to keep a safe place in which the employe is to work, to a
fellow servant who is negligent or careless in the perform-
ance of his duty, then the master would be liable for the
neglect of such fellow servant.'' It is urged as against
these two instructions that they are inconsistent, in that
instruction No. 4 in effect makes the master an insurer;
that is, that it is the legal duty of the master to use rea-
sonable and ordinary care to render the place of work safe,
or to use care to make it ordinarily safe, but that to say that
the master must furnish a safe place to work is too broad,
and misleading, and is not properly qualified by the use of
the phrase following the general charge of a duty to make
it safe, that he must exercise ordinary or reasonable care
to make and keep it safe, but leaves the master in effect an
insurer, and excludes assumption of risk, and is quite a
different thing from the statement of the true rule, that the
master must use ordinary and reasonable care to make, and
keep it safe, and we think the instructions are open to the
objections urged.

They are erroneous for another reason. They travel on
the theory of the nondelegable duty of the master, and as
an abstract proposition may be correct in that par-
ticular, but they are not applicable to the facts under
the findings which are in conflict as to the duty of
notice to appellee under his employment, of the presence of
the torpedoes, and that the injury was unusual, though
such as might have been anticipated, where the danger arose
not from the place itself, except as torpedoes were or were
not present, and where appellee knew all about the presence
of torpedoes, and their character and use, and was himself
required under his employment to guard against them, and

there was no rule or custom to notify, and the flagman's duty was apparently with respect to flagging trains, and not in protecting the push car appellee was using. In other words, had the master itself been present, did it owe a duty to warn appellee, under the facts found, or did the danger arise from transitory perils in the changing details of the work, and the work and place become unsafe in carrying out the details of the work? *Lehigh, etc., Cement Co.* v. *Bass, supra; Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418; *Fort Wayne Iron, etc., Co.* v. *Parsell* (1907), 168 Ind. 223, 79 N. E. 439; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 68 N. E. 262, 63 L. R. A. 460; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280, 66 N. E. 886. Whether the flagman was a vice principal or a fellow servant would be immaterial under the Federal act, whether he was discharging a duty owing to appellee, or was a mere fellow servant. But appellee assumed the risk of the general service in which he was engaged, and if it was not the neglect of a duty owing to him, from which injury arose, but from a risk of the employment assumed by him, an element wholly lacking in these instructions, they were inapplicable to the questions of care in supplying a safe place to work, and nondelegable duties of masters, even though in other instructions the jury was fairly instructed on some phases of assumption of risk, for the jury is nowhere told what would constitute a delegation of duty, or who would be a fellow servant, and was without guide in those particulars, as it was also as to the question of what, if any, duty appellants owed appellee, under the facts disclosed, with two contradictory statements on the question of the duty of a master to use ordinary and reasonable care to provide a safe place o work.

The court charged on its own motion by its instruction No. 5 "that plaintiff, when he entered defendants' service, impliedly agreed that he would assume all risks which were ordinarily and naturally incident to

the particular service in which he was engaged; also the risk of any dangerous things or obstructions in the place in which he is required to work, which are open and obvious to him and which by the exercise of ordinary care and diligence he could have discovered, and if the jury believe from all the facts and circumstances proved that the plaintiff prior to his injury had actual knowledge of the presence of the torpedo on defendants' track, and of the danger incident to the use and explosion of torpedoes so placed on railway tracks, or by the exercise of ordinary care and diligence he would have discovered said torpedo, and the danger therefrom in the use, and from the explosion of such torpedo, and with such knowledge the plaintiff continued in the service of the defendants and was injured, he is held to have assumed the risk of the danger from the explosion of such torpedo and he would not be entitled to recover.'' The negation of knowledge of the presence of the torpedo, or its danger in use, and that the danger was not open and obvious or discoverable by reasonable care on the part of appellee is also embraced in this instruction, as furnishing a right of recovery. The jury finds specially that he had full knowledge in all these particulars, and while in the first part of the instruction, it was fully and fairly charged on the question of assumption of risk, yet it finds a general verdict for appellee. It must be manifest that it could only have done so upon the theory of appellants' being insurers of a safe place to work, as a nondelegable duty of appellants, irrespective of assumed risk, showing that it was misled, or so confused by the instructions, as not to distinguish between them as to the question of the duty of masters as to the place of work and the risk assumed by the servant.

15. Instruction No. 4 would not alone be sufficient to authorize a reversal of the judgment, for appellants' tendered instruction No. 15 has the same language respecting a master's duty as to the place of work.

Appellants insist that a judgment should have been ren-

dered in their favor on the answers to the interrogatories. It is found that appellee had bad eyesight, and usually wore glasses that he might see farther, and was not at the time using his glasses, and that the torpedo was such an object of danger as to require notice of its presence, even though it was not customary to give notice, and the rules did not require it, and experience had shown such injuries as unusual, but that the injury was such as was to have been reasonably anticipated, and that there was a flagman present in charge of the torpedo, even though he was flagging for trains, coupled with the finding that he was directed to ride where he did, and the injury seems to have arisen from that fact, and these findings forbid that this motion should prevail.

Upon the whole case however, justice requires a reversal of the judgment, and it is so ordered, with instructions to the court below to sustain the motion for a new trial as to both appellants, and for further proceedings not inconsistent with this opinion.

## On Petition for Rehearing.

An earnest and able brief is filed by appellee on petition for a rehearing, in which it is urged that we mistook the gravamen of the action as one of failure to provide a safe place to work, whereas it is asserted the cause of action is for negligence in placing the torpedo on the track and leaving it there. It is true that the negligence alleged is in placing a torpedo on the track and leaving it there, but it must be plain that it is in its last analysis, the failure to make and keep the place of work reasonably safe, and in appellee's original brief his position is stated as follows in his points and authorities, in Nos. 1, 5, 7, 19, 24 and 26. 1. "In charging a failure to furnish a safe place to work it is not necessary to allege that something was defective or out of repair. A useful appliance in perfect condition may be so used or placed by the master or some person

to whom the master has attempted to delegate the duty of making or keeping a safe place, as to become an obstruction or other dangerous agency." 5. "A complaint alleging facts from which a breach of a nondelegable duty to provide a reasonably safe place to work, may be inferred, is good." 7. "If the master delegates the duty to another to furnish his servant a safe place to work this does not excuse the master and the person to whom the duty is delegated as a vice principal." 19. "Every place where a servant is required to go in the line of his duty must be kept safe, even if it requires inspection to do so." 24. "No matter by whom the duty of furnishing a safe place to work is performed, the master is liable." 26. "Proof of a custom to furnish servants an unsafe place to work, is no defense." Appellee's requested instructions were on that theory, involving, under the particular allegations, changing conditions of the place, that is, of reasonable safety or otherwise, depending whether torpedoes were or were not on the track.

It is next urged that we were in error in our conclusion that the cause had been tried in the court below as a common-law action, whereas, as counsel assert, the complaint was drawn under the Federal act. There is no allegation in the complaint, or finding by the jury, that appellants were engaged in interstate commerce, or that appellee was so engaged. It may possibly be inferred from the allegation that the line of railway extended from Louisville through Indiana to St. Louis, but it is essential that it should appear that appellee was injured while engaged in interstate commerce. *Illinois Cent. R. Co.* v. *Behrens* (1914), 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051. But it is conceded and asserted by appellee in the last brief, that the cause was tried as a common-law action.

It is next urged that we were in error respecting the subject of assumption of risk, and that instruction No. 4 is only a modified form of instruction No. 15 tendered by appellants, and therefore the error an

invited one. The difficulty with appellee's position is that this instruction is just the reverse of instruction No. 15, and as we pointed out, wholly disregards the question of assumption of risk, which, under the holdings of the Supreme Court of the United States, we are not at liberty to ignore. In *Seabord Air Line Railway* v. *Horton* (1914), 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, it is said, ''It seems to us that §4, in eliminating the defense of assumption of risk in the cases indicated, [injury arising from violation of a statute] quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action. And, taking §§3 and 4 together, there is no doubt that Congress recognized the distinction between contributory negligence and assumption of risk; for, while it is declared that neither of these shall avail the carrier in cases where the violation of a statute has contributed to the injury or death of the employe, there is, with respect to cases not in the category, a limitation upon the effect that is to be given to contributory negligence, while no corresponding limitation is imposed upon the defense of assumption of risk—perhaps none was deemed feasible.'' In the later case of *Southern R. Co.* v. *Crockett* (1914), 234 U. S. 725, 34 Sup. Ct. 897, 58 L. Ed. 1564, it is said, ''Upon the merits, we of course sustain the contention that by the Employers Liability Act the defense of assumption of risk remains as at common law, saving in the cases mentioned in §4, that is to say: any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury or death of such employe.'' Our own cases have uniformly held that assumption of the risk no longer constitutes a defense, where the employer has violated a statute enacted for the safety of employes. *Vandalia R. Co.* v. *Stilwell* (1914), 181 Ind. 267, 104 N. E. 289; *Cleveland, etc., R. Co.* v. *Oesterling* (1914), *post* 481, 103 N. E. 401; *Waverly Co.* v. *Beck* (1913), 180 Ind. 523, 103 N. E. 332. Whatever, if any,

different construction could have been put upon the act of Congress, the question is foreclosed by the decisions of the Supreme Court of the United States.

The evidence is urged as showing that it was the duty of the flagman to remove the torpedo for the push car. There is other evidence that he was not flagging for the push car, and that it was the duty of those on that car to look out for and remove the torpedoes themselves, and that when flagmen did remove them for hand cars, it was for the purpose of preserving them, and the jury so finds, and that the trackmen were provided with torpedoes to replace those which might be exploded by them, and that the purpose of removal by trackmen or flagmen was to save the torpedo, and that it was not customary to notify of the presence of torpedoes, and that appellee knew as much about these facts as any one. These findings preclude appellee's theory of the duty owing him, and we think we did not misapprehend the record, and that the petition for a rehearing should be overruled.

NOTE.—Reported in 105 N. E. 1025; 106 N. E. 369. As to the liability for injury to railroad employe by torpedoes on the track, see 16 L. R. A. (N. S.) 1084; 19 Ann. Cas. 1097. As to the requirements that master furnish servant with safe means and appliances to work with, see 92 Am. Dec. 213, 21 Am. Rep. 579. See, also, under (1) 26 Cyc. 1394; (2, 5) 26 Cyc. 1165; (3) 26 Cyc. 1397; (4) 26 Cyc. 1393; (6) 26 Cyc. 1386; (7) 11 Cyc. 996; (8) 7 Cyc. 421; (9) 26 Cyc. 1180; (10) 11 Cyc. 751; (11) 3 Cyc. 383; (12, 13) 26 Cyc. 1491; (14) 3 Cyc. 442; (15) 3 Cyc. 248; (16) 26 Cyc. 1513; (17) 26 Cyc. 1384; (18) 26 Cyc. 1395; (19) 3 Cyc. 248; (20) 26 Cyc. 1516.