Fred Genzel, Administrator of the Estate of Charles Wellman, Deceased, Appellee, v. New York, Chicago & St. Louis Railroad Company, Appellant.

Gen. No. 8,144.

Opinion filed January 25, 1928.

H. M. STEELY and H. M. STEELY, JR., for appellant; JOHN B. COCKRUM and J. T. MARKEY, of counsel.

LOUIS J. BREMER, for appellee; H. ERNEST HUTTON, of counsel.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellee recovered a judgment in the sum of $2,500, in an action on the case against appellant, for damages resulting from the death of one Charles Wellman, alleged to have been caused through the negligence of appellant.

The original declaration consisted of two counts. Subsequently six additional counts were filed and the case went to the jury upon all the counts except the second additional count. It is averred in each count,

in substantially identical language, that on the 18th day of June, 1926, and for a long time prior thereto, the defendant was possessed of, using and operating a certain steam railroad extending from the State of Indiana into the State of Illinois, and through the county of McLean thereof, which said railroad passed through the villages of Ellsworth and Padua in the said county aforesaid, and in the operation of such business said defendant, by divers of its servants, in that behalf, propelled, drove and operated over said railroad divers locomotives, cars of trains, carrying passengers, express, freight and United States mail matter, consigned from points in Illinois to destinations in States other than Illinois, consigned from points in Indiana to destinations in the State of Illinois, and consigned from points outside of Illinois through Illinois to points in States other than Illinois, and over its said railroad in said business of carrying such passengers, freight and United States mail, received, hauled and handled divers cars, both empty and loaded, of other railroads, connecting with said railroad of defendant, all in and about the said business of the defendant, and was then and there possessed of a certain track over which said railroad conducted its business, which said business of the defendant then and there and theretofore, for many months, was that of a common carrier by railroad engaged in moving interstate commerce and passengers for hire.

The above facts alleged are sufficient to charge that appellant, in its general business, was engaged as a common carrier of interstate commerce. In the first count it is further stated that the deceased was employed as a section man and that in the regular course of his employment, on the day in question, was directed to proceed to a point about one mile east of Padua, for the purpose of flagging a passenger train of the defendant, which was then and there traveling over said railroad in a westerly direction; that on ac-

count of the repairing of said track a slowboard or signal was posted in the line of the track, at a point 1,000 to 1,800 feet east of the point where deceased was directed to go for the purpose of flagging the train; that it was the duty of servants of appellant, operating said train, when they reached the point of said slowboard to reduce their rate of speed to eight miles per hour and run their train under full control, keeping a close lookout for persons on said track, who might be making repairs on same, including the deceased, acting as flagman; that the deceased had gone several hundred feet east of the section crew for the purpose of flagging said train and while engaged in said work he either became suddenly ill or fell asleep on said track; that the engineer and fireman on the engine of said train wilfully and knowingly failed to observe the warning of said signal board and ran past the same in disregard of said warning, at a high and dangerous rate of speed of, to wit, 30 miles per hour. On account of such wilful and knowing misconduct, the passenger train was not, then and there, under full control and because thereof ran upon and over the body of the deceased.

The second count of the original declaration is substantially the same.

In the first additional count it is averred that during the repair work on the track one of the section men had by defendant daily been stationed along said track at respective points, to wit, one mile in each direction from the place where the work was being done, and on the day in question the deceased had been stationed to act as such flagman, one mile east of Padua; that the engineer and fireman had daily, in the daytime, for one year prior to said date, traveled in a westerly direction along the main track where flagmen had so customarily been stationed and then and there knew that one of such flagmen was likely to be upon or along said track at said point; that it

became and was the duty of said engineer and fireman, when so approaching said part of said track, to use reasonable care and keep a constant and vigilant lookout for the presence of such flagman and that such lookout would have revealed to said engineer and fireman the presence of the deceased; that in violation of their said duty said engineer and fireman propelled said train toward and upon said deceased and wilfully, recklessly and wantonly failed to keep such lookout, in consequence whereof the train struck said deceased causing his death. The third additional count, after stating the facts in regard to the flagman being stationed along the track as set out in the previous counts, further avers that the deceased was lying, reclining or sitting, asleep, sick or resting upon, next to and against the rail and ties of the track in such a position that he would be struck and injured or killed by trains of defendant passing thereover; that at a point 200 feet before reaching the place where the deceased was in said perilous position, servants of the defendant in charge of the train saw and knew that he was on or near said main track at said point in such perilous position, that their train, if it continued to proceed westward over said track, would be likely to kill or injure him; that by the exercise of reasonable care they could have reduced the speed of the train and have brought the same to a stop before reaching said point, but wilfully failed to slacken the speed or stop the train, thereby causing the death of the deceased.

In the fourth additional count, after setting out the prior averments mentioned, the negligence charged is that the deceased while in the performance of his duties, with all due care and diligence for his own safety, was within one foot of the track, and that the train was so carelessly and improperly driven that it struck him, causing his death.

In the fifth additional count the negligence charged is substantially that while the deceased was within one foot of the south rail of the track, either resting or sick, the roadbed curved in such a manner that trains coming from the east would proceed within 100 feet of such point before the presence of the deceased could be seen by the fireman and engineer thereof; that defendant had conspicuously placed and maintained one-half mile east and one-half mile west of where deceased was stationed as flagman, fixed signals called "slowboards" which bounded an area called "slow area" all by the rules and customary operation and work of the defendant; that certain rules and regulations of defendant required that firemen must be in position to see all governing signals at any dangerous points and to call the same as clear or not to the engineer; that enginemen should, at all times, keep a constant and vigilant lookout ahead; that at a cautionary signal the train should be kept under such control that the enginemen thereof can stop the same within their range of vision; that in approaching curves the engineer must sound the whistle to give working parties a chance to get out of the way; that the engineer and fireman well knew and by the exercise of due care would have known that a flagman was likely to be stationed at the point where deceased then was and knew or by the exercise of due care would have known of such curves in the road; that they drove said train in violation of their duty prescribed by said rules and the law, and failed to sound such signals when so approaching said curves, to keep such lookout ahead and to keep the movement of such train under such control.

In the sixth additional count it is averred that the deceased was lying, reclining or sitting, asleep, sick or resting next to and against the rail and ties of the track; the maintenance of the slowboards and the duties of the engineer to reduce the speed to eight miles per hour and to have the train under such con-

trol that it could be stopped within range of his vision; that the fireman and engineer saw, knew and were appraised of an object along said track, which object was the deceased, and that after so seeing said object the engineer and fireman, by the exercise of ordinary care, should have stopped their train before reaching the same, and that it was their duty to use reasonable care and keep said train, approaching said object, under such control that they would not drive the same against said object until it was definitely known to them whether it was a flagman and to bring the train to a full stop before passing the same, but wilfully, wantonly and recklessly drove said train against said object, which was the deceased, thereby causing his death.

The action is brought under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 et seq., and the rights of the parties must be determined from the provisions of that act, governed by the interpretation placed thereon by the Federal courts. The declaration and pleas present only issues arising out of said act and the case was tried and the jury instructed upon that theory. At the close of the evidence introduced on behalf of appellee, and again at the close of all the evidence, appellant made a motion to exclude the evidence under each count and to give an instruction directing the jury to find it not guilty. These motions were overruled. The appellant also, after its motion to set aside the verdict and for a new trial had been overruled, made a motion in arrest of judgment. Numerous errors have been assigned upon the record, one of which is the contention of appellant that no count in the declaration is sufficient to sustain a cause of action under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 et seq. It has been consistently held, both by Federal and State courts, that it must be both charged in the declaration and proven by the evidence that, at the time of the in-

jury complained of, the employer and employee must have been engaged in interstate commerce. In no count in this declaration is it averred that at the time of the injury that the deceased was engaged in interstate commerce, and only by mere inference, in three of the counts, that appellee was so engaged therein. *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473; *Pedersen v. Delaware L. & W. R. Co.,* 229 U. S. 146; *Southern R. Co. v. Howerton,* 182 Ind. 208; *Walton v. Southern Ry. Co.,* 179 Fed. 175, 176. In the case of *Northern Trust Co. v. Grand Trunk Western R. Co.,* 282 Ill. 565, it is held: ''To authorize a recovery under the Federal Employers' Liability Act it is required that the carrier and the injured employee should both have been engaged in interstate commerce at the time of the injury. * * * It would seem to follow that a declaration against an interstate carrier for an injury to an employee does not state a cause of action under the Federal Employers' Liability Act unless it alleges that at the time of the injury the employee was also engaged in interstate commerce, and that to maintain an action under the Federal Employers' Liability Act the plaintiff must specifically state in the declaration all facts necessary to bring himself within the provisions of the act and thus enable the court to judge whether he has a cause of action under the Federal statute.''

A demurrer to the declaration had in the first instance been overruled, and appellant, instead of electing to abide by its demurrer, joined issue thereon by filing pleas thereto and cannot now question the ruling on the demurrer. On a demurrer pleadings are construed most strongly against the pleader, but after verdict this rule is reversed, and anything necessary to be proved which may fairly be inferred from the declaration will be assumed to have been alleged. Tested by this rule, an inference can be drawn from the declaration that at the time of the injury appellant

was engaged in running a train from the State of Indiana to points in Illinois, and the deceased was killed while acting as flagman to protect the section crew while it was repairing the tracks over which the train was running. *Wagner v. Chicago, R. I. & P. R. Co.,* 277 Ill. 114, 117.

Counsel for appellee on the trial served notice on appellant to produce its book of rules. The book was produced in court and offered to counsel for appellee. Instead of proving the rules of appellant in regard to the operation of its trains and especially in regard to the conduct of engineers and its other employees when stopboards were met, it placed the witness Lawrence upon the stand and handed him a book containing the rules of the Wabash Railroad Company, and he was permitted to testify, over objection, that the said rules were standard railroad rules that had been adopted by 32 railroads; that appellant was a member of the New York Central system which was working under said rules and that appellant itself was working under such rules. This witness was not and never had been an employee of appellant, though at one time he had been a conductor on some other road. He had not been connected with any railroad for seven years. No basis for his knowledge of whether appellant had ever adopted or was working under the so-called standard rules at the time of the accident was shown. Moreover, it was conclusively proven that appellant was not a member of the New York Central system of railroads. Over objections the rules of the Wabash Railroad were permitted to be introduced in evidence. The witness was permitted also to go into detail and explain the meaning of the words used in the rules governing the operation of the Wabash Railroad. Appellant was refused permission to show that the Wabash rules were not the rules adopted by appellant. The court stated to counsel for appellant when he permitted the Wabash book of rules to be admitted in

evidence as follows: "You offer them your book of rules. They did not see fit to use them. They didn't seem to like them or to want them after they got them. They want to use their own. They proved by witnesses, and the testimony is to the effect, that these rules are the same rules your company operates under, they are standard rules. There is some evidence to that effect and there is nothing else to do but admit them." The effect of this ruling was simply to permit a witness, who had no knowledge whatever of what rules the appellant company was operating under, to testify that the appellant was operating under what was called "Standard Rules," or such rules as had been adopted some time in the past, not by appellant but by the Wabash Railroad Company, and this notwithstanding the fact that upon notice appellant produced its own rules in court and offered them to counsel for appellee. The rules of the Wabash Railroad Company, and the elucidation thereof by this witness, were wholly incompetent evidence. This witness was also permitted to testify, in answer to numerous hypothetical questions, how the brakes should have been applied by the engineer, in what space the train could have been stopped going at certain speeds, and what the engineer and fireman should have done under various states of facts without showing any other foundation for his knowledge in regard thereto, than that he had, at one time, been a conductor, seven years prior to the accident. Not one of the hypothetical questions was based upon a proper hypothesis.

It is also assigned as error that the verdict is contrary to the evidence. As the judgment in this case must be reversed for the reasons hereinbefore stated, it is unnecessary to discuss this question.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*